1  GREGORY M. SALVATO (SBN 126285)
        Gsalvato@salvatolawoffices.com
2  JOSEPH BOUFADEL (SBN 267312)
        Jboufadel@salvatolawoffices.com
3  SALVATO LAW OFFICES
4  Wells Fargo Center
5  355 South Grand Avenue, Suite 2450
   Los Angeles, California 90071-9500
6  Telephone:    (213) 484-8400
   Facsimile:    (213) 402-3778
7
   Attorneys for Debtor-in-Possession
8  ALTADENA LINCOLN CROSSING LLC,
   a Delaware limited liability company
9

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                      **LOS ANGELES**

13

14  | In re: | Case No. 2:17-bk-14276-BB |
15  | ALTADENA LINCOLN CROSSING LLC, a Delaware limited liability company, | Chapter 11 |
16  | | |
17  | Debtor. | **Objection to Secured Creditor East West Bank's Proof of Claim No. 9; Declarations of Greg Galletly and Gregory M. Salvato, Esq. in Support** |
18  | |
19  | |
20  | | Self-Calendared Hearing Date: |
21  | | Date:         November 15, 2017 |
22  | | Time:        10:00 a.m. |
23  | | Place:       Courtroom 1539 |
    | |              255 E. Temple Street |
24  | |              Los Angeles, CA 90012 |
25

26

27

28

Salvato Law
Offices

## TABLE OF CONTENTS

1.  Introduction. ..................................................................................................... 1

2.  Factual Background. ........................................................................................... 2

    2.1.  East West Bank's original construction loan in 2005. ........................... 2

    2.2.  Various addendums to the construction loan increasing the principal
    balance and interest rate. .................................................................... 4

    2.3.  Sale of the Market Quadrant portion of the Property and paydown
    of the construction loan in 2015. ......................................................... 4

    2.4.  The Final Forbearance Agreement in 2016. ......................................... 4

    2.5.  Debtor's bankruptcy case. ................................................................... 5

        2.5.1.  East West Bank's Proof of Claim No. 9. ................................... 6

        2.5.2.  EWB's incomplete document production. .................................. 7

3.  Legal Arguments. ............................................................................................... 7

    3.1.  California Civil Code Section 1671(b) is the applicable standard to
    determine whether a default interest provision in a non-consumer
    contract is an unenforceable penalty. ................................................... 8

    3.2.  EWB's interest hike of 6% upon default is an unenforceable penalty
    where it exists to coerce the Debtor's timely performance and where
    it has no reasonable relationship to the actual damages anticipated
    by the parties to flow from a breach of the Promissory Note. ............... 9

    3.3.  Paragraph 2(d) of the Forbearance Agreement is an unenforceable
    penalty where the Debtor will incur default interest and other
    charges in excess of $12 million if it fails to pay the loan in full, or
    fails to comply with the terms of the loan as modified by the
    Forbearance Agreement. .................................................................... 14

    3.4.  Unreasonable liquidated damages provisions cannot be waived as a
    matter of public policy under California Civil Code Section
    1671(b). ........................................................................................... 20

    3.5.  Debtor is entitled to an offset of the amounts sought to be
    reimbursed by the Trustee of the estate of BGM Pasadena, LLC on
    account of its compromise with East West Bank. ................................ 21

4.  Conclusion. ...................................................................................................... 22

Declaration of Greg Galletly .................................................................................. 23

Declaration of Gregory M. Salvato, Esq. ................................................................ 29

Salvato Law
Offices

Objection to Secured Creditor East West Bank's          -ii-          *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                          Case No. 2:17-bk-14276-BB

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                   **Page(s)**

*In re 8110 Aero Drive Holdings, LLC*
   2017 Bankr.LEXIS 1808 (Bankr. S.D. Cal. May 8, 2017) .................. 10, 11, 12, 13, 14

*Cal. Bank & Trust v. Shilo Inn, Seaside East, LLC*
   2012 U.S.Dist.LEXIS 163134 (D. Or. Nov. 15, 2012) ..................... 8, 10, 11, 12, 13, 14

*GE Capital Corp. v. Future Media Prods.*
   536 F.3d 969 (9th Cir. 2008) ................................................................ 8

*In re Mkt. Ctr. East Retail Prop., Inc.*
   433 B.R. 335 (Bankr. D.N.M. Aug. 3, 2010) .......................................... 13

**California State Cases**

*Blank v. Borden*
   11 Cal.3d 963 (Cal. 1974) .................................................................. 12

*Ebbert v. Mercantile Trust Co.*
   213 Cal. 496 (1931) ........................................................................... 19

*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.*
   9 Cal. 3d 731 (Cal. 1973) .................................................... 9, 11, 12, 13, 16, 21

*Harbor Island Holdings v. Kim*
   107 Cal.App.4th 790 (2003) ............................................... 16, 17, 18, 21

*McGuire v. More-Gas Investments, LLC*
   220 Cal.App.4th 512 (2013) ............................................................... 15, 16

*Morris v. Redwood Empire Bancorp*
   128 Cal.App.4th 1305 (2005) .............................................................. 9

*Perdue v. Crocker Nat'l Bank*
   38 Cal.3d 913 (Cal. 1985) ................................................................... 9

*Promenade v. Shake*
   2015 Cal.App.Unpub.LEXIS 1556 (2015) ............................................ 20

*Purcell v. Schweitzer*
   224 Cal.App.4th 969 (2014) .............................................. 10, 17, 18, 19, 20

Salvato Law
Offices

Objection to Secured Creditor East West Bank's          -iii-          *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                          Case No. 2:17-bk-14276-BB

1

## <u>TABLE OF AUTHORITIES</u>

2

### (Continued)

3

4

*Ridgley v. Topa Thrift & Loan Ass'n*
    17 Cal.4th 970 (1988) .................................................................. 9, 13, 17, 18, 19, 20, 21

5

6

7

**Federal Statutes**

8

Bankruptcy Code
    § 502(a) ................................................................................................................ 7
    § 502(b) ............................................................................................................. 1, 8

9

10

11

12

**California Statutes**

13

California Civil Code
    § 1670 ................................................................................................................ 20
    § 1671(b) ......................................................................................................... *passim*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Salvato Law
Offices

28

1    **1. Introduction.**

2       Pursuant to Bankruptcy Code Section 502(b)(1), Debtor Altadena Lincoln Crossing

3    LLC (the "**Debtor**") objects to East West Bank's Proof of Claim No. 9 that seeks default

4    interest, fees, and other improper charges in excess of $12,118,061.16 that are

5    unenforceable penalties under California Civil Code Section 1671(b).[1] (*See* **Exhibit A**:

6    POC, chart of pre-petition amounts at Bates No. ALC0008).

7       EWB made a construction loan in 2005, secured by a first priority lien on the

8    Debtor's Property. It has been followed by a series of forbearance agreements extending

9    the original maturity date, and imposing a default interest rate and other charges for non-

10   performance in excess of $12 million, constituting an amount that is approximately 90%

11   of the unpaid principal loan balance now due.

12      EWB's default interest provision and related charges are the quintessential example

13   of an unenforceable penalty under California law. It is the "stick" intended to coerce the

14   Debtor's timely performance under the Promissory Note and Final Forbearance

15   Agreement that bears no reasonable relationship to the range of actual harm that the

16   parties anticipated at the time the agreements were entered into. The provisions are

17   disproportionate, unreasonable, and punitive; the default penalty would result in a

18   windfall to EWB unrelated to the harm caused by the Debtor's default.

19      The Debtor's claim objection will address three interrelated issues with the

20   unenforceable default interest provisions that EWB seeks to collect in its Proof of Claim

21   No. 9.

22      The first issue is whether the default interest provision is an unenforceable penalty

23   _____

24   [1] Debtor's Objection to EWB's Proof of Claim No. 9 does not address the significant
     lender liability claims that the Debtor believes it has and will assert against EWB, which
25   claims will be dealt with in a separate adversary proceeding because the Debtor seeks
     affirmative relief.  While the lender liability claims are not a condition precedent to
26   confirmation, the Debtor's First Amended Plan of Reorganization currently before the
     Court preserves the Debtor's right to bring such claims after confirmation if they have not
27   been asserted before then.

28

Salvato Law
Offices

1    under California law (applicable nonbankruptcy law), such that $12 million in default

2    interest and other charges are being imposed as a penalty to coerce the Debtor to perform

3    under the loan, rather than representing a reasonable attempt to quantify the actual

4    damages that EWB would suffer in the event that the Debtor's payments were late.

5        The second issue is whether Paragraph 2(d) in the Final Forbearance Agreement

6    constitutes an unenforceable penalty where the lender will receive more than $12

7    million—a 90% penalty—if the Debtor fails to comply with any of the terms of the Loan

8    Agreement as modified by the Final Forbearance Agreement. As in the Promissory Note,

9    the default interest and other charges in the Forbearance Agreement are being threatened

10    as a penalty to coerce timely performance, and were not the result of a reasonable attempt

11    at that time to quantify EWB's actual damages in the event of a default.

12        The third issue is whether EWB's otherwise unenforceable penalty provisions may

13    be waived as a matter of law by the Debtor in exchange for EWB's forbearance.

14        For the following reasons, the Debtor contends that the default interest provision,

15    late charges, and fees in the Promissory Note and the penalty provisions upon any default

16    in the Final Forbearance Agreement constitute illegal and unenforceable penalties that

17    cannot be recovered by EWB, and that can never be waived as a matter of California

18    public policy.

19

20    **2.  Factual Background.**

21        **2.1.    East West Bank's original construction loan in 2005.**

22        The Debtor owns and operates a mixed-use commercial and residential

23    development in Altadena, California, anchored by a 37,000-square foot 24 Hour Fitness

24    Center as the major tenant and consisting of five other retail spaces and 8 residential units

25    (the "**Property**").

26        On April 28, 2005, Debtor executed a promissory note in favor of East West Bank

27    in the principal amount of $18,000,000 (the "**Promissory Note**"). (EWB POC, internal

28    **Exhibit 2** at Bates No. ALC0027). The Promissory Note matured on August 1, 2006.

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support

-2-

*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    (*Id.*). The obligation was secured by a first position deed of trust recorded against the

2    Property in Los Angeles County as Instrument No. 05-1336139. (POC, internal **Exhibit 3**

3    at Bates No. ALC0031).

4        As provided in the Promissory Note, the initial non-default contract rate of interest

5    on the $18,000,000 principal balance is 6.750%,[2] the default interest rate is 6.000% over

6    the variable Index rate,[3] and the late charge is 6.000% of each delinquent payment.[4] The

7    variable interest rate—both non-default and default rates—apply to the entire unpaid

8    principal balance. (POC, internal **Exhibit 2** at Bates No. ALC0027).

9        At the time the parties executed the Promissory Note, there were no discussions or

10    any reasonable attempts to evaluate EWB's possible damages in the event of a breach.

11    (*See* Declaration of Greg Galletly submitted concurrently herewith). The parties did not

12    discuss the default interest provision in the context of actual damages likely to be

13    sustained, nor the harm that EWB would suffer as a result of late payments. Additionally,

14    EWB has not met its burden where it has failed to produce any documents to date with

15    respect to its calculations of the actual damages it would likely suffer in determining the

16    appropriate default interest rate in the event of a default. (*See* Declaration of Gregory M.

17    Salvato, Esq. filed concurrently herewith).

18    _____

19    [2] The initial non-default interest rate in the Promissory Note is a variable interest rate:

20    "**VARIABLE INTEREST RATE**…The Index currently 5.750%. The Interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage

21    point over the Index, resulting in an initial rate of 6.750%." (POC, internal **Exhibit 2** at Bates No. ALC0027).

22

23    [3] As defined in the Promissory Note: "**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 6.000 percentage

24    points over the Index, if permitted under applicable law." (POC, internal **Exhibit 2** at Bates No. ALC0027) (formatting in original).

25

26    [4] As defined in the Promissory Note: "**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 6.000% of the regularly scheduled payment." (POC,

27    internal **Exhibit 2** at Bates No. ALC0027) (formatting in original).

Salvato Law
Offices

28

**2.2.    Various addendums to the construction loan increasing the principal balance and interest rate.**

On May 24, 2006, the Debtor and EWB executed the first of several addendums and changes in terms to the initial $18,000,000 loan. (POC at internal **Exhibits 4 to 13**).

The loan agreement and deed of trust were amended from time to time. (*Id.*).

On May 1, 2008, the loan was modified to, among other things, increase the principal amount to $26,000,000, modify the interest rate, and extend the maturity date to February 2, 2009. (POC at internal **Exhibits 11 to 13**).

**2.3.    Sale of the Market Quadrant portion of the Property and paydown of the construction loan in 2015.**

On or around January 2015, Debtor sold the Market Quadrant section of the Property. As a result, the Debtor made a $10,000,000 pay down of its loan balance with EWB. (POC at Bates No. ALC0007).  The issues arising from the pay down from the sale of the Market Quadrant – and the Bank's inexplicable failure to abide by its commitment for a further forbearance of the loan – are not addressed in this claim objection, but will be addressed in an anticipated further proceeding detailing the Debtor's lender liability claims against EWB.

**2.4.    The Final Forbearance Agreement in 2016.**

On or around August 2008, the first of thirteen forbearance agreements were entered into between the Debtor and EWB. (POC, internal **Exhibit 14**, ¶ G of Recitals at Bates No. ALC0086).

On February 10, 2016, the parties entered into the thirteenth and final forbearance agreement (the "**Final Forbearance Agreement**" or "**Forbearance Agreement**"). (POC at internal **Exhibit 14**). The Forbearance Agreement provides that the unpaid principal balance of the loan was $13,773,465.57, plus default interest at 6% above the Index for a total of $9,419,035.61 [Unpaid Default Interest], late charges from December 2007 through February 2016 for $179,637.44 [Late Charges], and $2,600,000 in various charges and fees. (POC, internal **Exhibit 14** at ¶ 2(a) at Bates No. ALC0091).

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support    -4-    *In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    Paragraph 2(d) of the Forbearance Agreement provides that EWB "shall forgive"

2    an amount in excess of $12 million in default interest and other late charges on the unpaid

3    principal balance of $13,773,465.57 **only if** the Debtor complies with all the terms under

4    the Loan documents and Forbearance Agreement, including non-monetary terms and

5    making timely payments in accordance with EWB's modified payment schedule. (POC,

6    internal **Exhibit 14** at ¶ 2(d) at Bates No. ALC0092). Otherwise,

7    
8    "**if the Loan is not repaid in full** on or prior to the expiration of the
     Forbearance Period [or if another Terminating Event or Event of
9    Default occurs]," then the "entire principal amount of the Loan, all
     accrued but unpaid interest, default interest, fees, costs and expenses
10   (including without limitation the Late Charges, the Default Interest
     and Unpaid $50,000 Payments included in the definition of
11   '**Forgiveness Amount**' above) shall be immediately due and owing."

12   (*Id.*)

13   At the time that the parties entered into both the Forbearance Agreement, there

14   were no discussions or any reasonable attempts to ascertain EWB's actual damages in the

15   event of a breach. The parties did not negotiate the default interest provisions or the

16   penalty provisions in Paragraph 2(d) of the Forbearance Agreement. None of the amounts

17   purportedly owed under the Forbearance Agreements were conditionally deferred; rather

18   the original amounts owed increased by the "Forgiveness Amount" if payments were late

19   or in the event of a default as defined therein. (*Id.*).

20   **2.5.    Debtor's bankruptcy case.**

21   On April 7, 2017, the Debtor filed its voluntary Chapter 11 petition, commencing

22   this bankruptcy case. (Dkt. No. 1).

23   On May 23, 2017, upon the Debtor's application, the Court set August 9, 2017 as

24   the bar date for filing proofs of claim in this Chapter 11 case. (Dkt. No. 68).

25   On June 8, 2017, the Court entered an Order designating the Debtor as a Single

26   Asset Real Estate debtor under Bankruptcy Code Section 101(51B). (Dkt. No. 87).

27   On June 8, 2017, the Court entered an Order designating the Debtor as a Single

28   Asset Real Estate debtor under Bankruptcy Code Section 101(51B). (Dkt. No. 87).

Salvato Law
Offices

1    On August 8, 2017, EWB timely filed Proof of Claim No. 9, its first position

2    secured claim against the Property in the amount of $25,909,579.33. (**Exhibit A**: POC).

3    On June 12, 2017, the Debtor filed is original Plan of Reorganization and

4    Disclosure Statement. (Dkt. Nos. 95, 96).

5    On September 13, 2017, the Debtor filed a First Amended Disclosure Statement

6    with respect to its First Amended Plan of Reorganization (Dkt. Nos. 226-231), proposing

7    to pay the EWB Claim in an allowed amount that excluded all default interest and related

8    penalty charges.  The Debtor's Objection to the EWB Proof of Claim No. 9 is a condition

9    precedent to confirmation of the Debtor's Plan.

10    ### 2.5.1.  East West Bank's Proof of Claim No. 9.

11    EWB's Claim provides the following breakdown of the alleged pre-petition

12    amounts owed by the Debtor:

| | |
|---|---|
| Principal Balance | $13,528,556.85 |
| Interest | $262,961.32 |
| Default Rate Penalty Interest | $10,211,440.43 |
| Late Charges | $81,173.27 |
| Legal Fees | $62,704.52 |
| Exit Fee | $1,715,000.00 |
| [Other Fees] | $  47,742.94 |
| Total: | $25,909,579.33 |

22    In addition, the Proof of Claim includes a total for post-petition amounts charged in

23    respect of its loan, as of July 11, 2017:

| | |
|---|---|
| Interest | $28,748.18 |
| Default Rate Penalty Interest | $178,501.78 |
| Legal Fees | $51,280.20 |
| Total: | $258,530.16 |

1   Proof of Claim No. 9 does not include any analysis on the default interest provision

2   at issue here, nor any explanation as to how EWB arrived at the default interest percentage

3   at the relevant times.

4   In addition, EWB does not provide any evidentiary support for its claim for legal

5   fees, "exit" fee or other fees and charges claimed as part of its Proof of Claim No. 9.

6   ### 2.5.2.  EWB's incomplete document production.

7   Despite the Order authorizing the Rule 2004 Examination of EWB entered on July

8   28, 2017 (Dkt. No. 180), EWB has failed to produce full discovery to the Debtor,

9   including failing to provide responses to the inquiries regarding EWB's considerations

10  and calculations regarding damages likely to be sustained in respect of a default under the

11  loan. (*See* Declaration of Gregory M. Salvato, Esq.).  And, despite the Court's clear ruling

12  on EWB's Motion to Quash heard on August 29, 2017, EWB has to date only provided a

13  portion of its loan file (approximately 7,900 pages) on October 3, 2017, more than 67 days

14  after EWB was ordered to produce them.  If the Bank had documentation establishing its

15  evaluation of potential damages likely to be sustained in the event of a default, and had

16  used those determinations in establishing the default interest rate, it is likely those

17  documents would have been already produced by this late date.

18  EWB's only document production to date does not appear to include any

19  documents reflecting EWB's calculations or discussions of the default interest rate

20  imposed in the Promissory Note and Final Forbearance Agreement. EWB has not

21  produced any documents evidencing discussions with the Debtor regarding the actual and

22  proportional damages that would flow from the Debtor's failure to perform.  Indeed, no

23  such discussions ever took place. (*See* Galletly Declaration, at ¶¶ 19-24).

24

25  ### 3.  Legal Arguments.

26  Pursuant to Bankruptcy Code Section 502(a), a claim or interest is deemed allowed

27  unless a party in interest objects. If an objection to the proof of claim is made, the

28  bankruptcy court shall determine the amount of the claim as of the date of the petition,

Salvato Law
Offices

Objection to Secured Creditor East West Bank's          -7-          *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                                 Case No. 2:17-bk-14276-BB

1  and shall allow the claim in said amount unless a statutory exception exists under

2  Bankruptcy Code Section 502(b). Pursuant to Bankruptcy Code Section 502(b)(1), a claim

3  shall be disallowed if it is "unenforceable against the debtor and property of the debtor,

4  under any agreement or applicable law for a reason other than because such claim is

5  contingent or unmatured." *See also* 4-502 Collier on Bankruptcy (2013 ed.) ¶ 502.03[2][b]

6  ("The effect of section 502(b)(1) is to make available to the trustee any defense to a claim

7  that might have been available to the debtor").

8     **3.1.    California Civil Code Section 1671(b) is the applicable standard to**

9          **determine whether a default interest provision in a non-consumer**

10         **contract is an unenforceable penalty.**

11  In the Ninth Circuit, a "bankruptcy court should apply a presumption of

12  allowability for the contracted for default rate, provided that the rate is not unenforceable

13  under applicable nonbankruptcy law." *GE Capital Corp. v. Future Media Prods*., 536

14  F.3d 969, 974 (9th Cir. 2008).

15  Whether the default interest provision in the Promissory Note and Forbearance

16  Agreement is unenforceable is governed by California law—the applicable nonbankruptcy

17  law. (POC, internal **Exhibit 14** at ¶ 15(f) at Bates No. ALC0102).

18  California Civil Code Section 1671(b) provides the test to determine whether a

19  liquidated damages provision in a commercial, non-consumer contract is an unenforceable

20  penalty. It states that:

21       "a provision in a contract liquidating the damages for the breach of
         the contract is valid unless the party seeking to invalidate the
22       provision establishes that the provision was unreasonable under the
23       circumstances existing at the time the contract was made."

24  *See* Cal. Civ. Code § 1671(b).

25  "A liquidated damages clause will generally be considered unreasonable, and

26  hence unenforceable under section 1671(b), if it bears no reasonable relationship to the

27  range of actual damages that the parties could have anticipated would flow from a breach"

28  at the time the contract was made. *Cal. Bank & Trust v. Shilo Inn, Seaside East*, *LLC,*

Salvato Law
Offices

2012 U.S.Dist.LEXIS 163134 at *12 (D. Or. Nov. 15, 2012) (citing *Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal.4th 970, 977 (1988)). "Absent a relationship between the liquidated damages and the damages the parties anticipated would result from a breach, a liquidated damages clause will be construed as an unenforceable penalty." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1314 (2005).

The liquidated damages amount "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal. 3d 731, 739 (Cal. 1973), *superseded by statute on other grounds.* "An amount disproportionate to the anticipated damages is termed a 'penalty.' A contractual provision imposing a 'penalty' is ineffective, and the wronged party can collect only the actual damages sustained." *Perdue v. Crocker Nat'l Bank,* 38 Cal.3d 913, 931 (Cal. 1985).

As discussed below, the liquidated damages provisions in the Promissory Note and Forbearance Agreement are unenforceable penalty provisions devoid of any reasonable relationship to the actual damages that EWB would have suffered at the time the agreements were executed, and are not the result of a reasonable attempt of the parties to estimate EWB's damages at the time the agreements were negotiated.

**3.2.    EWB's interest hike of 6% upon default is an unenforceable penalty where it exists to coerce the Debtor's timely performance and where it has no reasonable relationship to the actual damages anticipated by the parties to flow from a breach of the Promissory Note.**

EWB's default interest, late charges and fees in the Promissory Note bear all the marks of an unenforceable penalty under California Civil Code Section 1671(b). EWB seeks to recover more than $12 million in unenforceable penalties. (POC at Bates No. ALC0008).

At the time the Promissory Note was executed, the initial interest rate was 6.75%, compromised of a variable Index rate of 5.75% plus 1%. Upon default, the interest rate increased by 6% plus the variable Index rate on the unpaid principal balance. For

Salvato Law
Offices

Objection to Secured Creditor East West Bank's        -9-        *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                Case No. 2:17-bk-14276-BB

1    example, the default interest rate on the unpaid principal balance would have been 12.75%

2    at the time the loan was executed. Therefore, the interest rate increase of 6% on default is

3    **more than double** the initial Index rate on the loan.

4         EWB, as the party seeking the benefit of the default interest provision in the

5    Promissory Note, "must plead and prove that the clause is valid under the facts which then

6    existed." *Purcell v. Schweitzer*, 224 Cal.App.4th 969, 975 (2014). EWB has failed to do

7    so.

8         In *Shilo Inn*, the district court held that a default interest provision was invalid

9    under California Civil Code Section 1671(b). *Cal. Bank & Trust v. Shilo Inn, Seaside*

10    *East, LLC*, 2012 U.S. Dist. LEXIS 163134 at *16-18. The lender sought to retain default

11    interest of $110,153 and late fees totaling more than $10,000 resulting from the

12    borrower's breaches. *Id.* at *16. The default interest provision in the promissory notes

13    stated that "[u]pon default, the interest rate on [the] Note[s] shall immediately increase by

14    5.000 percentage points, if permitted under applicable law." *Id.* at *7.

15         The district court agreed with the borrower and held that the default interest

16    provisions constituted unenforceable penalties because the $110,153 in default interest

17    and $10,000 in late charges did not bear a reasonable relationship to the lender's

18    anticipated damages at the time the default interest provisions were executed. *Id.* at *8 &

19    16. The lender failed to meet its burden and proffered "no evidence showing the damages

20    provided by the default interest provisions have any bearing on the range of harm that

21    reasonably could have been anticipated at the time the parties agreed to the provisions,

22    and proffers insufficient evidence demonstrating that the default interest provisions are

23    related to the actual damages that [lender] could have anticipated would flow from

24    [borrower's] breaches." *Id.* at 16.

25         In *In re 8110 Aero Drive Holdings, LLC,* 2017 Bankr.LEXIS 1808 (Bankr. S.D.

26    Cal. May 8, 2017), the lender asserted that the debtor owed $673,206.85 in default interest

27    in addition to $64,997.50 in late charges. *Id.* at *21. The debtor agreed to pay an initial

28    interest rate of 5.977%, with an increased rate of 5% upon default, for a default interest

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support                    -10-                    *In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    rate of 10.977% on the outstanding principal balance of the loan. *Id.* at *10, fn.9; 29. In

2    agreeing with the debtor, the bankruptcy court first held that the default interest was a

3    liquidated damages provision under section 1671(b) where it left the debtor with no

4    practical cure right because the cure amount was more than five times the actual payments

5    missed. *Id.* at *31. Like in *Garrett*, the default interest was included to coerce timely

6    payment of the loan. *Id.* at *31.

7        The bankruptcy court then determined that the default interest and late charge

8    constituted an unreasonable penalty. *Id.* at *32-36. First, the default interest was not

9    proportional to the lender's anticipated damages. "The default interest of $673,206.85 plus

10   the late charge of $64,997.50 is a 151.47% increase over the $293,556.80 in missed

11   payments, even ignoring the other consequences of default. The default interest is not

12   proportional to Lender's losses, and this factor is easily met." *Id.* at *33-34. Second, the

13   debtor presented uncontradicted testimony that the parties never discussed the anticipated

14   damages that would reasonably flow from a breach of the loan at the time it was executed.

15   *Id.* at *34. Therefore, the default interest provision in the loan was an unenforceable

16   penalty. *Id.* at *36.

17       Here, the Debtor has carried its burden of proof to demonstrate that the liquidated

18   damages provision in the Promissory Note is an unenforceable penalty.

19       First, the default interest is a liquidated damages provision under Civil Code

20   Section 1671(b) where the purpose of the default interest (and other charges) is to coerce

21   the Debtor's timely payments of the Promissory Note, rather than to compensate EWB for

22   its anticipated damages. As in *Shilo Inn, 8110 Aero Drive,* and *Garret,* the default interest

23   is an invalid liquidated damages provision where it is a disproportionate interest charge

24   contingent on breach. It is not an alternative form of performance, like a prepayment

25   charge not conditioned upon default. *See Garret*, 9 Cal.3d. at 740 ("We are compelled to

26   conclude that a charge for the late payment of a loan installment which is measured

27   against the unpaid balance of the loan must be deemed to be punitive in character. It is an

28   attempt to coerce timely payment by a forfeiture which is not reasonably calculated to

Salvato Law
Offices

1   merely compensate the injured lender"); *Shilo Inn*, 2012 U.S. Dist. LEXIS 163134 at *17-

2   18 ("[Lender's] bald assertions that the default interest provisions are valid because they

3   are intended to compensate [lender] for the lost opportunity costs of reinvesting the loan

4   proceeds and to compensate it for its increased risk of dealing with defaulted borrowers

5   are unpersuasive. Generally, every loan that a bank makes to a borrower carries such

6   risks"); *8110 Aero Drive Holdings, LLC,* 2017 Bankr.LEXIS 1808 at *31 ("Similarly, the

7   default interest here allows Lender to charge a higher interest on any unpaid principal and

8   accrued interest during the period of default. The clause at issue in *Garrett* is nearly

9   identical to the default interest here…[and] left Debtor with no practical cure right

10  because the amount to cure was magnified by over five times the actual payments missed.

11  The court, therefore, concludes the default interest was included to coerce timely

12  payment"); *See also Blank v. Borden*, 11 Cal.3d 963, 971 (Cal. 1974) (late charge

13  calculated as a percentage of the unpaid balance during which the payment was in default

14  cannot be viewed as mode of alternative performance where "[the] arrangement, viewed

15  from the time of making the contract, realistically contemplates no element of free rational

16  choice on the part of the obligor insofar as his performance is concerned; rather the

17  agreement is founded upon the assumption that the obligor will make the lower

18  payment").

19        Second, EWB's liquidated damages provisions are extravagant.  They bear no

20  reasonable relationship to the harm that could have been anticipated at the time the parties

21  executed the Promissory Note. EWB has not provided a detailed breakdown of the default

22  interest calculations to the unpaid loan balance. Yet, based upon the default interest

23  provisions summarized in the Proof of Claim, the interest rate on the unpaid loan balance

24  increased by 6%, resulting in default interest of $10,211,440.43 (in addition to other

25  charges and fees) on the unpaid principal balance of $13,528,556.85. Excluding the other

26  charges and fees claimed by EWB, the default interest provision resulted in interest

27  totaling 75% of the unpaid principal balance. If the other fees and late charges are

28  included, the penalty increases to approximately 90% of the unpaid principal balance. *See*

Salvato Law
Offices

1  *also In re Mkt. Ctr. East Retail Prop., Inc*., 433 B.R. 335, 365 (Bankr. D.N.M. Aug. 3,

2  2010) ("the Court finds that a creditor should not get both an above market default interest

3  rate and late fees on the same debt").

4        As in the cases of *Shilo Inn, 8110 Aero Drive Holdings, Garrett,* and *Ridgley*, the

5  purpose of the default interest provision imposed here was to coerce timely performance

6  under the loan. It was not reasonably designed to compensate EWB for the actual losses it

7  anticipated. And, as in those cases, the default interest provisions should be deemed

8  unenforceable penalties, having the punitive effect of punishing the Debtor for breaching

9  the Promissory Note rather than compensating EWB for the reasonable losses the parties

10  could have anticipated from the breach. *Shilo Inn*, 2012 U.S. Dist. LEXIS 163134 at *15-

11  16 (concluding that default interest provisions are unenforceable penalties that resulted in

12  an interest rate increase of 5% on outstanding loan balance in addition to late fees); *8110*

13  *Aero Drive Holdings, LLC,* 2017 Bankr.LEXIS 1808 at *10, fn. 9; 33-34 (concluding that

14  a 5% increase above the interest rate provided on the outstanding balance of the loan, or

15  10.977% in total, is an unreasonable penalty); *Garrett,* 9 Cal.3d at 740 (holding that "the

16  event of a late payment a borrower is to be charged an additional amount equal to 2

17  percent per annum for the period of delinquency assessed against the *unpaid principal*

18  *balance of the loan obligation*" is punitive and an attempt to coerce timely payment, and

19  therefore deemed an unenforceable penalty); *Ridgley*, 17 Cal.4th at 981 (concluding that

20  the "charge of six months' interest on the entire principal, imposed for any late payment

21  or other default, cannot be defended as a reasonable attempt to anticipate damages from

22  default").

23        Third, EWB has submitted no evidence in its Proof of Claim that the default

24  interest provisions were the result of a reasonable endeavor by the parties to approximate

25  the harm that would flow from a breach. (**Exhibit A**: POC).  EWB has failed to

26  demonstrate that these provisions were the result of a reasonable effort to approximate the

27  damages at the time the Promissory Note was executed.  Indeed, the only evidence is to

28  the contrary.  (*See* Galletly Declaration at ¶¶ 19-24).

Salvato Law
Offices

1   Significantly, EWB has not filed a response nor provided documents regarding any

2   of the Debtor's document requests as to its calculation of the damages it was likely to

3   sustain in determining the default interest rate imposed as a penalty for non-performance

4   by the Debtor. Absent the provision of such information, EWB cannot establish the

5   validity of its penalty interest, and that interest (which comprises a major part of the

6   Claim) must be disallowed. As a result, EWB's Claim must be substantially reduced to

7   reflect only the principal balance and the non-default rate of interest due.

8   At or around the time the Promissory Note was executed in 2005, there was no

9   discussion of the reasonably anticipated damages that would result from any potential

10  breach. There was no estimate of the range of damages that EWB would incur if the

11  Debtor defaulted. And EWB has not submitted any evidence that demonstrates the

12  damages it anticipated would directly follow from the Debtor's breach. *Shilo Inn*, 2012

13  U.S. Dist. LEXIS 163134 at *17-18 ("[Lender's] bald assertions that the default interest

14  provisions are valid…are unpersuasive. The lack of evidence showing that the default

15  interest provisions bear a reasonable relationship to the damages [lender] could have

16  anticipated at the time the parties agreed to the provisions establish that the liquidated

17  damages provisions constitute a penalty and are therefore unenforceable"); *8110 Aero*

18  *Drive Holdings, LLC,* 2017 Bankr.LEXIS 1808 at *34 ("The court finds that Debtor met

19  its burden of proof that the parties made no reasonable endeavor to quantify the damages"

20  at the time the loan was executed).

21  **3.3.    Paragraph 2(d) of the Forbearance Agreement is an unenforceable**

22  **penalty where the Debtor will incur default interest and other charges**

23  **in excess of $12 million if it fails to pay the loan in full, or fails to**

24  **comply with the terms of the loan as modified by the Forbearance**

25  **Agreement.**

26  A separate unenforceable liquidated damages provision also exists in the Final

27  Forbearance Agreement. In Paragraph 2(d), EWB labels the amount in excess of

28  $12,198,673.05 as a "Forgiveness Amount," but it is a penalty by another name. As

Salvato Law
Offices

discussed above, EWB cannot label a penalty as a discount, forgiveness amount, or otherwise to circumvent California Civil Code Section 1671(b). *McGuire v. More-Gas Investments, LLC*, 220 Cal.App.4th 512, 523 (2013) ("Our Supreme Court has 'consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures'").

Paragraph 2(d) of the Forbearance Agreement provides that EWB "shall forgive" an amount in excess of $12 million in default interest and other late charges on the unpaid principal balance of $13,773,465.57 only if the Debtor fully complies with the terms of the Forbearance Agreement and loan documents:

> "2. Acknowledgements and Agreements. ***

> (d) Assuming there is no prior Termination Event or Event of Default other than the Existing Breaches, to the extent the Loan is repaid in full on or before the expiration of the Forbearance Period [November 15, 2016; *see* Exhibit 15 of POC], Lender agrees that it shall forgive the following (the '**Forgiveness Amount**'): (i) the total amount owed in connection with the Unpaid $50,000 Payments, (ii) the total amount of the Late Charges and (iii) the total amount of the Unpaid Default Interest Amount, together with the portion of the unpaid and accrued interest which accrues from and after the date hereof at the default rate of interest (the '**Default Interest**').

> Without limiting the foregoing, if the Loan is not repaid in full on or prior to the expiration of the Forbearance Period, or if this Agreement is terminated upon a Termination Event or Event of Default, then (in either case) the entire principal amount of the Loan, an accrued but unpaid interest, default interest, fees, costs and expenses (including without limitation the Late Charges, the Default Interest and Unpaid $50,000 Payments included in the definition of '**Forgiveness Amount**' above) shall be immediately due and owing."

(POC, internal **Exhibit 14** at ¶ 2(d) at Bates No. ALC0092) (paragraph breaks added).

Simply, the Forbearance Agreement provides that if the Debtor is not in breach of any term and pays the full amounts purportedly due on time ("to the extent the Loan is repaid in full on or before the expiration of the Forbearance Period [November 15, 2016]"), EWB will "forgive" approximately $12 million in default interest, late fees and

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support
-15-
*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    charges. (POC, internal **Exhibit 14** at ¶ 2(d) at Bates No. ALC0092; **Exhibit 15**).

2    Otherwise, if the Debtor does not repay the loan by November 15, 2016, or if there is a

3    breach of a material term of the Forbearance Agreement, the Forgiveness Amount of $12

4    million will become immediately due and owing. (*Id.*). This is the class example of an

5    unenforceable penalty under Civil Code Section 1671.

6    The "Forgiveness Amount" in excess of $12 million is the carrot used to coerce the

7    Debtor to perform *under the Forbearance Agreement* in a timely manner. It is also the

8    stick that rewards EWB by penalizing the Debtor.

9    The $12 million penalty bears no reasonable relationship to the actual damages that

10    EWB would suffer in the event the loan was not repaid during the Forbearance Period. It

11    is the penalty that the Debtor must pay should it not comply with the full terms of the

12    Forbearance Agreement. That is, the "Forgiveness Amount" is not a discount that the

13    Debtor receives as an option for alternative performance under the agreements.  If the

14    Debtor performs, then $12 million is *forgiven*. If the Debtor does not perform in any way,

15    the $12 million becomes immediately due and payable. There is no element of free

16    rational choice given to the Debtor with respect to performance. Consequently, the

17    "Forgiveness Amount" and related items in the Forbearance Agreement are unenforceable

18    penalty provisions. *McGuire v. More-Gas Investments, LLC*, 220 Cal.App.4th at 523 (If

19    the provision in the contract "'viewed from the time of making the contract, realistically

20    contemplates no element of free rational choice on the part of the obligor insofar as his

21    performance is concerned …, [citation to *Garrett*]' the provision will be deemed to

22    provide for a penalty").

23    In *Harbor Island,* the landlord entered into a lease extension with its tenant who

24    agreed to pay increased monthly rent. *Harbor Island Holdings v. Kim*, 107 Cal.App.4th

25    790, 793 (2003). Under the lease extension, half of the monthly rent would be

26    conditionally deferred and ultimately forgiven if the tenant complied with all obligations

27    under the extension. *Id.* at 793. The landlord sued, alleging the tenant breached its

28    obligation to maintain and repair the premises and sought $13,970 in damages and

Salvato Law
Offices

Objection to Secured Creditor East West Bank's          -16-          *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                          Case No. 2:17-bk-14276-BB

1    $240,912 in deferred base rent. *Id.* at 793-94.

2         The appellate court held that the deferred rent provision was an unlawful penalty

3    under Civil Code Section 1671(b). *Id.* at 793 & 799. The appellate court rejected the

4    landlord's argument that the $240,912 was for the full amount of the agreed-upon rent or

5    the landlord's actual damages for the breach. *Id.* at 797. It noted that the landlord needed

6    the $240,912 in deferred rent "hanging over the heads of [the tenant] in order to feel

7    secure that they would indeed perform." *Id.* at 798. In so doing, the landlord failed to

8    recognize the settled law on unenforceable penalty provisions under Section 1671(b): "If

9    the sum extracted from the [obligor] is designed to exceed substantially the damages

10   suffered by the [obligee], the provision for the additional sum, whatever its label, is an

11   invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt

12   payment through the threat of imposition of charges bearing little or no relationship to the

13   amount of the actual loss incurred…" *Id.* at 798 (quoting *Ridgley,* 17 Cal.4th at 981).

14        The appellate court also rejected the reasoning of the landlord who insisted it was

15   entitled to collect the deferred rent because of the tenant's imperfect performance under

16   the lease extension. *Id.* at 798. While the landlord "would have waived, or forgiven, the

17   $240,912 in the event there had been no breach of any nature, it would not waive the

18   amount because there had been a breach, causing $13,970 in damages." *Id.* This reasoning

19   was expressly rejected, as the appellate court explained: "A forfeiture or unreasonable

20   penalty, imposed only upon the other party's default, is unenforceable even though the

21   same money, property or other consideration might have validly been bargained for as a

22   form of contractual performance. A contrary conclusion would allow unreasonable late

23   charges and other penalties to escape legal scrutiny through simple rephrasing as a

24   conditional waiver." *Id*. at 798-99 (quoting *Ridgley,* 17 Cal.4th at 982).

25        In *Purcell,* the lender and borrower entered into a settlement agreement after the

26   lender sued for the borrower's default on an $85,000 loan. *Purcell,* 224 Cal.App.4th at

27   971. The settlement agreement provided that the borrower pay $38,000, plus 24 monthly

28   payments with interest. *Id.* If payment was not timely received, it would be considered a

Salvato Law
Offices

1    breach of the settlement agreement, and the entire $85,000 would become due. *Id.* The

2    settlement agreement specified that the $85,000 "is an agreed upon amount of monies

3    actually owed," "is neither a penalty nor is it a forfeiture," and took into account "the

4    economics associated with proceeding further with this matter." *Id.* at 972. Furthermore,

5    the agreement provided that the borrower waived any right to an appeal and any right to

6    contest or otherwise set aside the judgment." *Id.*

7          When the borrower defaulted under the settlement agreement by making a late

8    payment, the lender obtained a judgment for more than $58,000. *Id.* at 973. In setting

9    aside the judgment, the appellate court held that that $58,000 judgment was an

10   unenforceable and unreasonable penalty under Civil Code Section 1671(b) because the

11   settlement was for $38,000 and the stipulated judgment "bore no reasonable relationship

12   to the damages that it could be expected that [the lender] would suffer as a result of a

13   breach by [the borrower]." *Id.* at 975-76. Furthermore, the appellate court rejected the

14   lender's argument that the borrower agreed to the terms of the settlement agreement,

15   which expressly waived any challenges and where it expressly stated that the $85,000

16   reflected the economics associated of proceeding further with the lawsuit. *Id.* at 976. It

17   held that these provisions bore no reasonable relationship to the damages the lender would

18   expect to suffer as a result of a breach, and that the language tying "the $85,000 to the

19   economics of proceeding further with the matter was an obvious attempt to circumvent the

20   public policy expressed in [Section 1671(b)]." *Id.* at 976.

21         Here, the Forbearance Agreement imposes an unreasonable penalty to induce

22   performance akin to that imposed in *Harbor Island*, *Ridgley,* and *Purcell*. Like in those

23   cases, the Forbearance Agreement imposes an unreasonable penalty that has no reasonable

24   relationship to the range of actual damages that the parties anticipated would follow from

25   a breach by the Debtor. For example, like the tenant in *Harbor Island,* if the Debtor

26   breached any of the terms of the Forbearance Agreement—either monetary or non-

27   monetary terms—regardless of the actual harm that resulted, the entire Forgiveness

28   Amount would become "immediately due and owing." (POC, internal **Exhibit 14** at ¶ 2(d)

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support

-18-

*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    at Bates No. ALC0092). The $12 million Forgiveness Amount was the stick hanging over

2    the head of the Debtor to make EWB feel secure that the Debtor would timely perform on

3    the unpaid principal balance of $13,773,465.57.

4         Likewise, the provisions in the Forbearance Agreement imposes an unlawful

5    penalty similar to that in *Purcell* that bears no reasonable relationship the range of actual

6    damages that EWB expected to suffer as a result of the Debtor's breach of the

7    Forbearance Agreement. The Debtor and EWB did not negotiate or analyze the actual

8    range of damages that EWB anticipated it would suffer if the Debtor breached the

9    Forbearance Agreement. (*See* accompanying Declaration of Greg Galletly). There was no

10    meeting of the minds as to the appropriate default interest rate or other charges

11    proportional to the actual damages that EWB anticipated it would incur in 2016 when the

12    Forbearance Agreement was executed. (*Id.*) The parties did not estimate these damages.

13    Yet, EWB was willing to "forgive" $12 million—or 90% of the principal balance—if the

14    Debtor fully repaid the loan. (*Id.*). This penalty of 90% of the principal balance bears no

15    reasonable relationship to the range of actual damages the Debtor and EWB could have

16    anticipated would flow from failure to repay the loan in full. *Ridgley*, 17 Cal.4th at 977

17    ("A penalty provision operates to compel performance of an act [citation] and usually

18    becomes effective only in the event of default [citation] upon which a forfeiture is

19    compelled without regard to the damages sustained by the party aggrieved by the

20    breach"); *Ebbert v. Mercantile Trust Co.,* 213 Cal. 496, 499 (1931) ("[A]ny provision by

21    which money or property would be forfeited without regard to the actual damage suffered

22    would be an unenforceable penalty").

23         Furthermore, the Forbearance Agreement cannot contract around the unlawful

24    penalty. As in *Purcell,* the Debtor breaches the entire Forbearance Agreement by missing

25    a single monthly payment, causing the entire $12 million Forgiveness Amount to become

26    immediately due and owing. And as in *Purcell*, the Debtor cannot expressly waive, cannot

27    agree to, and cannot reaffirm that the default interest amounts or charges are valid and

28    cured by the Forbearance Agreement if they were an unlawful penalty in the first instance

Salvato Law
Offices

Objection to Secured Creditor East West Bank's          -19-          *In re Altadena Lincoln Crossing LLC, Debtor*
Proof of Claim No. 9; Declarations in Support                              Case No. 2:17-bk-14276-BB

1    (see § 3.4 below).

2        As a result, the $12 million Forgiveness Amount is an unlawful penalty under Civil

3    Code Section 1671(b) that EWB is not entitled to recover.

4        **3.4.    Unreasonable liquidated damages provisions cannot be waived as a**

5        **matter of public policy under California Civil Code Section 1671(b).**

6        The unenforceable liquidated damages provisions in the Promissory Note and

7    Forbearance Agreement cannot be waived as a matter of law. Under Civil Code Section

8    1671(b), the public policy against unreasonable liquidated damages provisions cannot be

9    waived by contract or otherwise. *Purcell,* 224 Cal.App.4th at 975 ("[T]he public policy

10   expressed in Civil Code sections 1670 and 1671 *may not be circumvented by words used*

11   *in a contract*") (emphasis in original).

12       For example, in *Purcell,* the appellate court determined that an "express waiver" of

13   any challenge to a stipulated judgment "on any basis" was ineffective at preventing a

14   challenge to a penalty or forfeiture in light of the public policy expressed in Civil Code

15   Section 1671. *Purcell,* 224 Cal.App.4th at 975.

16       In *Promenade v. Shake,* a settlement agreement that included mutual general

17   releases and a no-fault provision did not insulate the agreement from attack. *Promenade v.*

18   *Shake*, 2015 Cal.App.Unpub.LEXIS 1556 at *5-6 (2015). "If a party could not challenge

19   an illegal term in a contract because he or she agreed to it, all statutes and other authorities

20   establishing prohibitions on certain types of contracts or contractual provisions would be

21   rendered meaningless and unenforceable. That is not the law." *Id.* at *9.

22       Furthermore, the *Ridgley* court determined that such waiver language is ineffective

23   to avoid scrutiny under Civil Code Section 1671 even if "bargained for" in a commercial

24   transaction:

25           "A forfeiture or unreasonable penalty, imposed only upon the other
             party's default, is unenforceable even though the same money,
26           property or other consideration might have validly been bargained for
             as a form of contractual performance. A contrary conclusion would
27           allow unreasonable late charges and other penalties to escape legal
             scrutiny through simple rephrasing as a conditional waiver. To accept

28

Salvato Law
Offices

1    that theory would be to 'condone a result which, although directly
2    prohibited by the Legislature, may nevertheless be indirectly
3    accomplished through the imagination of inventive minds.' (*Garrett,*
    *supra,* 9 Cal.3d at 737). We will not do so."

4  *Ridgley,* 17 Cal.4th at 982; *see also Harbor Island Holdings,* 107 Cal.App.4th at 799

5  (California courts have made it clear that sophisticated parties engaged in commercial

6  transactions are not exempt from the protections afforded under Civil Code Section

7  1671(b)).

**3.5.    Debtor is entitled to an offset of the amounts sought to be reimbursed by the Trustee of the estate of BGM Pasadena, LLC on account of its compromise with East West Bank.**

On August 9, 2017, the Chapter 11 Trustee, Peter J. Mastan, of the estate of BGM

Pasadena, LLC ("**BGM**") [Bankruptcy Case No. 2:15-bk-27833-BB] filed Proof of Claim

No. 14 against the Debtor in this underlying bankruptcy case, arising from its payment of

the EWB second priority loan, which was secured by a lien on the BGM Property, as the

Debtor's guarantor.  BGM also seeks reimbursement for the additional payment made to

EWB in compromise of the disputed amounts due, including amounts attributable to

default interest, legal fees and other charges imposed by the Bank.  BGM's Proof of

Claim asserts a claim for reimbursement against the Debtor, as a co-borrower, for the

amounts it is willing to pay or has already paid, including the amounts constituting the

disputed default interest charged by the Bank. Thus, the Debtor is asked to pay the

amounts of the default interest charged by East West Bank to BGM and other disputed

amounts paid through their compromise.

Because a portion of the amounts paid by the BGM Trustee constitute illegal

default interest, the Debtor has been damaged by the default interest charges for which the

BGM Trustee seeks reimbursement.  The Debtor, therefore, seeks an offset of any default

interest amount and other improper charges from the amounts due by the Debtor to East

West Bank on account of the undisputed amounts of the first lien.

Salvato Law
Offices

28

1    **4. Conclusion.**

2         For the foregoing reasons, Debtor's objection to EWB's Proof of Claim No. 9

3    should be sustained. The default interest and other late charges and fees in excess of $12

4    million in EWB's Claim are unenforceable penalties that are not recoverable pursuant to

5    California Civil Code Section 1671(b).  If EWB had sufficient evidence to establish its

6    adoption of default interest provisions that reasonably estimated the damages anticipated

7    in the event of a default, it surely would have produced such evidence by this date. The

8    fact that it has not done so indicates that there is no such evidence and its default penalty

9    interest amounts must be stricken.

10

11   Dated:   October 16, 2017                    SALVATO LAW OFFICES

12

13                                                         */s/ Gregory M. Salvato*
                                                 By: _____

14                                                      Gregory M. Salvato
                                                       Joseph Boufadel

15                                               Attorneys for Debtor-in-Possession

16                                               ALTADENA LINCOLN CROSSING

17                                               LLC, a Delaware limited liability
                                                 company

18

19

20

21

22

23

24

25

26

27

Salvato Law
Offices    28

# DECLARATION OF GREG GALLETLY

I, Greg Galletly, declare:

1.      I am the manager of Altadena Dorn-Platz, LLC, which is the manager of DPP Altadena, LLC, which manages Debtor Altadena Lincoln Crossing LLC (the "**Debtor**"). I have custody and control of the Debtor's business records and directly supervise the compilation and maintenance of such records. I have personally reviewed the files as they relate to matters discussed herein, and I make this Declaration based upon that personal review and my own personal knowledge.

2.      I have reviewed EWB's Proof of Claim No. 9, a copy of which is attached as **Exhibit A** to the accompanying declaration of Gregory M. Salvato, Esq.

3.      I submit this Declaration in support of the Debtor's Objection to East West Bank's Proof of Claim No. 9. The following facts are known to me of my own personal knowledge, and if called as a witness, I could and would competently testify to the truth thereof.

## Original Construction Loan in 2005

4.      The Debtor owns and operates a mixed-use commercial and residential development in Altadena, California, anchored by a 37,000-square foot 24 Hour Fitness Center as the major tenant and consisting of five other retail spaces and 8 residential units (the "**Property**").

5.      On April 28, 2005, Debtor executed a promissory note in favor of East West Bank in the principal amount of $18,000,000 (the "**Promissory Note**"). (POC, internal **Exhibit 2** at Bates No. ALC0027). The Promissory Note originally matured on August 1, 2006. (*Id.*). The obligation was secured by a first position deed of trust recorded against the Property in Los Angeles County as Instrument No. 05-1336139. (POC, internal **Exhibit 3** at Bates No. ALC0031).

6.      **Non-default interest rate**. The Promissory Note provides that the initial non-default contract rate of interest on the $18,000,000 principal balance is 6.750%:

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support

-23-

*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    "**VARIABLE INTEREST RATE**…The Index currently 5.750%.

2    The Interest rate to be applied to the unpaid principal balance of

3    this Note will be at a rate of 1.000 percentage point over the

4    Index, resulting in an initial rate of 6.750%." (POC, internal

5    **Exhibit 2** at Bates No. ALC0027).

6    7.    **Default interest rate**. The Promissory Note provides that the default

7    interest rate is 6.000% over the variable Index rate, with a late charge of 6.000% of each

8    delinquent payment:

9    "**INTEREST AFTER DEFAULT.** Upon default, the variable

10    interest rate on this Note shall immediately increase to 6.000

11    percentage points over the Index, if permitted under applicable

12    law." (POC, internal **Exhibit 2** at Bates No. ALC0027).

13    8.    **Late charge**.  The Promissory Note states that there is a late charge of

14    6.000% of each delinquent payment:

15    "**LATE CHARGE.** If a payment is 10 days or more late,

16    [Debtor] will be charged 6.000% of the regularly scheduled

17    payment." (POC, internal **Exhibit 2** at Bates No. ALC0027).

18    9.    The variable interest rate—both non-default and default rates—apply to the

19    entire unpaid principal balance. (POC, internal **Exhibit 2** at Bates No. ALC0027).

20    **No Discussions Regarding Range of Actual Damages EWB Anticipated to Incur**

21    **From a Breach of the Promissory Note**

22    10.    At the time the EWB and the Debtor entered into the Promissory Note in

23    2005, there had been no discussions regarding the applicable default interest rate or

24    reasonable attempts to evaluate and value EWB's actual damages in the event of a breach

25    by the Debtor.

26    11.    In my discussions with EWB's representatives, we did not discuss the

27    default interest provision in the context of actual damages, nor the damages that EWB

28    anticipated it would sustain if the Debtor breached the Promissory Note or was delayed in

Salvato Law
Offices

---

1   payment.

2       12.    In my discussions with EWB, we did not endeavor to evaluate or estimate

3   the range of actual damages that EWB would have suffered if the Debtor defaulted under

4   the Promissory Note. We also did not determine or evaluate whether the default interest

5   rate and late charges would compensate EWB for the harm it anticipated would result

6   from a breach at the time the Promissory Note was executed.  There were no such

7   discussions with the Bank regarding these issues at any time.

8                **Addendums to the Promissory Note Increasing**

9                    **the Principal Balance and Interest Rate**

10      13.    On May 24, 2006, the Debtor and EWB executed the first of several

11  addendums and changes in terms to the initial $18,000,000 loan. (POC at internal

12  **Exhibits 4 to 13**). The Promissory Note and deed of trust were amended from time to

13  time. (*Id*.).

14      14.    On May 1, 2008, the loan was modified to, among other things, increase the

15  principal amount to $26,000,000, modify the interest rate, and extend the maturity date to

16  February 2, 2009. (POC at internal **Exhibits 11 to 13**).

17               **The Thirteenth and Final Forbearance Agreement**

18                  **Regarding the Construction Loan**

19      15.    On or around August 2008, the first of thirteen forbearance agreements was

20  entered into between the Debtor and EWB. (POC, internal **Exhibit 14**, ¶ G of Recitals at

21  Bates No. ALC0086). At the time, I recall protesting the charges for default interest and

22  being told that the forms could not be changed; the default "penalty" was—according to

23  the Bank—imposed as an "incentive" for the Debtor to pay back the loan on time.

24      16.    On February 10, 2016, the parties entered into the thirteenth and final

25  forbearance agreement (the "**Final Forbearance Agreement**"). (POC at internal **Exhibit**

26  **14**). At that time, the Final Forbearance Agreement stated that the unpaid principal

27  balance of the loan was $13,773,465.57, plus default interest at 6% above the Index for a

28  total of $9,419,035.61 [Unpaid Default Interest], late charges from December 2007

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support

-25-

*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

1    through February 2016 for $179,637.44 [Late Charges], and $2,600,000 in various

2    charges and fees. (POC, internal **Exhibit 14** at ¶ 2(a) at Bates No. ALC0091).

3        17.    Paragraph 2(d) of the Final Forbearance Agreement provides that EWB

4    "shall forgive" an amount in excess of $12 million in default interest and other late

5    charges on the unpaid principal balance of $13,773,465.57 *only if* the Debtor complies

6    with all the terms under the Loan documents and Final Forbearance Agreement, including

7    non-monetary terms and making timely payments in accordance with EWB's modified

8    payment schedule. (POC, internal **Exhibit 14** at ¶ 2(d) at Bates No. ALC0092).

9        18.    Paragraph 2(d) provides in relevant part that:

10            "**[I]f the Loan is not repaid in full** on or prior to the expiration

11            of the Forbearance Period [or if another Terminating Event or

12            Event of Default occurs]," then the "entire principal amount of the

13            Loan, all accrued but unpaid interest, default interest, fees, costs

14            and expenses (including without limitation the Late Charges, the

15            Default Interest and Unpaid $50,000 Payments included in the

16            definition of '**Forgiveness Amount**' above) shall be immediately

17            due and owing."

18        19.    At the time the we entered into both the Forbearance Agreement, there were

19    no discussions or reasonable attempts to evaluate and value EWB's actual damages in the

20    event of a breach. The parties did not negotiate the default interest provisions or the

21    penalty provisions in Paragraph 2(d) of the Forbearance Agreement. None of the amounts

22    purportedly owed under the Forbearance Agreements were conditionally deferred; rather

23    the original amounts owed increased by the "Forgiveness Amount" if payments were late

24    or in the event of a default as defined therein.

25    **No Discussions Regarding Range of Actual Damages EWB Anticipated to Incur**

26            **From a Breach of the Final Forbearance Agreement**

27        20.    I have been directly involved in discussions with EWB for each of the

28    Forbearance Agreements and for the "Final" Forbearance Agreement in 2016.

21.    At the time the EWB and the Debtor entered into the Final Forbearance Agreement in February 2016, there had been no discussions or any reasonable attempts to evaluate and determine EWB's actual damages likely to be incurred in the event of a breach by the Debtor or delay in payment.

22.    In my discussions with EWB's representatives, we did not discuss the default interest provision or other charges in the context of actual damages, nor the harm that EWB anticipated it would suffer if the Debtor breached the Final Forbearance Agreement.  In particular, I recall only one discussion with the Bank regarding the excessive amount of default interest that EWB insisted remain a condition in the loan agreement and that could not be changed.  I specifically recall the Bank's statement that the default interest provisions were intended to provide an "incentive" for the Debtor to pay off the loan on time.

23.    In all of my discussions with the Bank, we did not attempt to estimate the range of actual damages that EWB would have suffered if the Debtor defaulted under the Final Forbearance Agreement. We also did not evaluate whether the default interest rate and late charges would compensate EWB for the harm it anticipated would flow, at that time, from a breach of the Final Forbearance Agreement.

## Sale of the Market Quadrant Portion of the Property and
## Paydown of the Construction Loan in 2015

24.    On or around January 2015, Debtor sold the Market Quadrant section of the Property to George Garikian.

25.    From the proceeds received from the sale, the Debtor made a $10,000,000 pay down of its loan balance with EWB. (POC at Bates No. ALC0007).

26.    The issues arising from the pay down from the sale of the Market Quadrant—and the Bank's inexplicable reversal of its promise to extend the loan—are not addressed in this claim objection, but will be addressed in a future proceeding regarding the Debtor's lender liability claims against EWB.

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support        -27-        In re Altadena Lincoln Crossing LLC, Debtor
Case No. 2:17-bk-14276-BB

1    I declare under penalty of perjury under the laws of the United States of America

2 that the foregoing is true and correct. Executed on October 16, 2017.

3

4              */s/ Greg Galletly*

5            _____

6              Greg Galletly

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Salvato Law
Offices 28

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>GREGORY M. SALVATO (SBN 126285)<br>SALVATO LAW OFFICES<br>355 South Grand Avenue, Suite 2450<br>Los Angeles, California 90071-9500 | CASE NO.:  2:17-bk-14276-BB<br><br>CHAPTER:  11<br><br>ADVERSARY NO.:<br>(*if applicable*) |
|---|---|
| *Attorney for:* Debtor Altadena Lincoln Crossing LLC | |
| In re:<br><br>ALTADENA LINCOLN CROSSING LLC,<br>a Delaware limited liability company,<br><br><br><br>                                        Debtor(s). | **ELECTRONIC FILING DECLARATION**<br>**(NON-INDIVIDUAL)**<br>**[LBR 1002-1(f)]** |

☐  Petition, statement of affairs, schedules or lists          Date filed: _____
☐  Amendments to the petition statements of affairs, schedules or lists     Date filed: _____
☒  Other (*specify*): __Declaration of Greg Galletly__          Date filed: __10/16/17__

## PART I – DECLARATION OF SIGNATORY OF DEBTOR OR OTHER PARTY

I, the undersigned, declare under penalty of perjury that: (1) I have been authorized by the Debtor or other party on whose behalf the above-referenced document is being filed (Filing Party) to sign and to file, on behalf of the Filing Party, the above-referenced document being filed electronically (Filed Document); (2) I have read and understand the Filed Document; (3) the information provided in the Filed Document is true, correct and complete; (4) the "/s/," followed by my name, on the signature lines for the Filing Party in the Filed Document serves as my signature on behalf of the Filing Party and denotes the making of such declarations, requests, statements, verifications and certifications by me and by the Filing Party to the same extent and effect as my actual signature on such signature lines; (5) I have actually signed a true and correct printed copy of the Filed Document in such places on behalf of the Filing Party and provided the executed printed copy of the Filed Document to the Filing Party's attorney; and (6) I, on behalf of the Filing Party, have authorized the Filing Party's attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California.

Date: __10/16/2017__                         _____

Signature (handwritten) of authorized signatory of Filing Party

Greg Galletly
Printed name of authorized signatory of Filing Party
__Manager of Altadena-Dorn Platz, LLC; Manager of DPP__ Altadena, LLC
Title of authorized signatory of Filing Party

## PART II – DECLARATION OF ATTORNEY FOR FILING PARTY

I, the undersigned Attorney for the Filing Party, declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Filing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) an authorized signatory of the Filing Party signed *Part 1 - Declaration of Authorized Signatory of Debtor or Other Party* of this *Declaration* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature of the authorized signatory of the Filing Party in the locations that are indicated by "/s/," followed by the name of the Filing Party's authorized signatory, on the true and correct printed copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration* and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration* and the Filed Document available for review upon request of the court or other parties.

Date: __10/16/2017__                         _____

Signature (handwritten) of attorney for Filing Party
Gregory M. Salvato
Printed Name of attorney for Filing Party

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2015                                **F 1002-1.DEC.ELEC.FILING.NONINDIVIDUAL**

## DECLARATION OF GREGORY M. SALVATO, ESQ.

I, Gregory Salvato, declare:

1.    I am an attorney at law licensed to practice before this Court and all Courts of the State of California. I was employed as counsel for the Debtor, Altadena Lincoln Crossing, LLC (the "**Debtor**") by Order entered on August 3, 2017 (Dkt. No. 191). The following facts are known to me of my own personal knowledge and if called as a witness, I could and would testify competently to the truth thereof.

### Debtor's Bankruptcy Case

2.    On April 7, 2017, the Debtor filed its voluntary Chapter 11 petition, commencing this bankruptcy case. (Dkt. No. 1).

3.    On May 23, 2017, upon the Debtor's application, the Court set August 9, 2017 as the bar date for filing proofs of claim in this Chapter 11 case. (Dkt. No. 68).

4.    On June 8, 2017, the Court entered an Order designating the Debtor as a Single Asset Real Estate debtor under Bankruptcy Code Section 101(51B). (Dkt. No. 87).

5.    On June 12, 2017, the Debtor filed is original Plan of Reorganization and Disclosure Statement. (Dkt. Nos. 95, 96).

6.    On September 13, 2017, the Debtor filed a First Amended Disclosure Statement with respect to its First Amended Plan of Reorganization. (Dkt. Nos. 226-231).

### East West Bank's Proof of Claim No. 9.

7.    On August 8, 2017, EWB timely filed Proof of Claim No. 9. A true and correct copy of EWB's Proof of Claim No. 9 filed with the Bankruptcy Court is attached hereto as **Exhibit A.**

8.    EWB's POC provides the following breakdown of the alleged pre-petition amounts owed by the Debtor on its first position lien on the Property:

| | |
|---|---|
| Principal Balance | $13,528,556.85 |
| Interest | $262,961.32 |
| Default Rate Penalty Interest | $10,211,440.43 |

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support
-29-
*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

| | |
|---|---|
| Late Charges | $81,173.27 |
| [Other Fees] | $1,825,447.46 |
| Total: | $25,909,579.33 |

9.      In addition, the Proof of Claim includes a total for post-petition amounts charged in respect of its loan, as of July 11, 2017:

| | |
|---|---|
| Interest | $28,748.18 |
| Default Rate Penalty Interest | $178,501.78 |
| Legal Fees | $51,280.20 |
| Total: | $258,530.16 |

10.      EWB's Proof of Claim No. 9 does not include any analysis on the default interest provision (and other charges) in the Promissory Note or the Final Forbearance Agreement. It does not analyze how EWB arrived at the default interest percentage at the relevant times. It does not include any discussions EWB had with the Debtor when negotiating the Promissory Note and Final Forbearance Agreement regarding the default interest or the appropriate measure of damages each party anticipated would result from the Debtor's non-performance.

11.      In addition, EWB does not provide any evidentiary support for its claim for legal fees, "exit" fee or other fees and charges claimed as part of its Proof of Claim No. 9.

### EWB's Incomplete Document Production

12.      On July 28, 2017, the Debtor filed its Motion for an Order Authorizing an Examination of East West Bank (Dkt. No. 175), and an Order authorizing the examination was entered on that day (Dkt. No. 180).  A true copy of the Order, together with the Document Requests, is attached hereto as **Exhibit B**.

13.      The Debtor made the following specific Document Requests in its discovery requests to the Bank:

Salvato Law
Offices

Objection to Secured Creditor East West Bank's
Proof of Claim No. 9; Declarations in Support
-30-
*In re Altadena Lincoln Crossing LLC, Debtor*
Case No. 2:17-bk-14276-BB

**"C. Default Interest Penalty Calculations**

30. All DOCUMENTS referring or relating to YOUR calculations of damages that YOU would sustain in the event of any default under the $18 MILLION LOAN.

31. All DOCUMENTS referring or relating to YOUR analysis of the appropriate default interest to apply to the $18 MILLION LOAN.

32. All DOCUMENTS referring or relating to YOUR internal bank policies regarding the imposition of default interest on commercial property loans made by YOU.

33. All DOCUMENTS referring or relating to YOUR analysis of the enforceability of the default interest applied by YOU to commercial property loans made by YOU in general, or the $18 MILLION LOAN in particular.

34. All DOCUMENTS referring or relating to YOUR internal discussions or actions that led to YOUR imposition of the default interest rate as to the $18 MILLION LOAN.

35. All DOCUMENTS referring or relating to YOUR efforts to arrive at a default interest rate that was intended to compensate YOU for actual anticipated damages that would result from a default under the $18 MILLION LOAN.

*See* **Exhibit B.**

14.     Despite the Order authorizing the Rule 2004 Examination of EWB, EWB has failed to produce the documents requesting information about the default interest rate charges specifically requested in the document requests served on the Bank.  In addition, despite the Order, EWB has not produced support for the amounts of legal fees and other charges asserted that are claimed in Proof of Claim No. 9.

15.     On August 29, 2017, the Court heard arguments on EWB's Motion to Quash or, alternatively, Motion for a Protective Order, seeking to avoid or delay having to produce discovery requested by the Debtor.

16.     Despite the Court's clear ruling on EWB's Motion to Quash heard on August 29, 2017, EWB has to date only provided a portion of its loan file (approximately

1    7,900 pages) on October 3, 2017, more than 67 days after EWB was ordered to produce

2    them. As of the date of this filing, no further documents have been produced.

3        17.    I have not seen any documents in EWB's only document production relating

4    to EWB's calculations or discussions of the default interest rate imposed in the

5    Promissory Note and Final Forbearance Agreement.

6        18.    EWB did not produce documents evidencing its discussions with the Debtor

7    regarding the actual and proportional damages that would flow from the Debtor's failure

8    to perform, which would be necessary to establish any claim to be able to charge default

9    penalty interest under the loan.

10        19.    As far as I can tell from the documents received to date, EWB has not

11    produced documents supporting its right to attorney's fees and other charges asserted in

12    its Proof of Claim No. 9.

13        20.    EWB has thus far also failed to provide dates for the requested deposition of

14    its witnesses under FRCP 30(b)(6).

15

16        I declare under penalty of perjury under the laws of the United States of America

17    that the foregoing is true and correct.

18        Executed on October 16, 2017, at Los Angeles, California.

19

20                                    */s/ Gregory M. Salvato*

21                                    _____

22                                    Gregory Salvato

23

24    Exhibits Authenticated by Declaration:

25      A. East West Bank's Proof of Claim No. 9

26      B. Order Granting Motion for Order Authorizing Examination of Secured Creditor

27         East West Bank and Production of Documents Pursuant to FRBP 2004; Exhibit A

Salvato Law
Offices

28