1  TIMOTHY J. YOO (SBN 155531)
   tjy@lnbyb.com
2  CARMELA T. PAGAY (State Bar No. 195603)
   ctp@lnbyb.com
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, CA 90067
   Telephone: (310) 229-1234
5  Facsimile: (310) 229-1244

6  Attorneys for Jason Rund
   Chapter 11 Trustee
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

12  In re                              Case No. 2:17-bk-14276-BB

13  ALTADENA LINCOLN CROSSING, LLC,    Chapter 7

14                     Debtor.         **MOTION TO APPROVE
                                       AGREEMENT WITH EAST WEST
15                                     BANK FOR: (1) SETTLEMENT OF
                                       STATE COURT ACTION; (2) RELIEF
16                                     FROM STAY; AND (3) DISMISSAL OF
                                       NINTH CIRCUIT APPEAL;
17                                     DECLARATION OF JASON RUND IN
                                       SUPPORT THEREOF**

18                                     Date:  January 15, 2020
                                       Time:  11:00 a.m.
19                                     Place: Courtroom 1539
                                              U.S. Bankruptcy Court
20                                            255 E. Temple Street
                                              Los Angeles, California
21

22

23

24

25

26

27

28

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE**:

Jason Rund, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estate of Altadena Lincoln Crossing, LLC (the "Debtor"), hereby moves this Court for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to approve a global resolution of all claims between the Trustee and East West Bank ("EWB") in accordance with the *Settlement Agreement and General Releases* dated December 17, 2019 (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 1 and is incorporated herein by reference. Filed concurrently herewith is a Motion To Approve Stipulation Granting Secured Creditor East West Bank Relief From Stay Pursuant to 11 U.S.C. § 362(d)(2) (the "Motion to Approve Stipulation"), which the Memorandum of Points and Authorities set forth below and Declarations of the Trustee and of Steven S. Chang support as well.

## I.

### INTRODUCTION

The Trustee, after numerous discussions with EWB, negotiated an agreement by which all of the issues and claims between the estate and EWB will be resolved. In short, EWB will pay the estate the sum of $1,500,000 in exchange for (1) dismissal of the estate's state court action against EWB; (2) dismissal of the 9th Circuit appeal; and (3) relief from stay so that EWB can foreclose on the Property (defined below). The approval of the Agreement will allow the Trustee to convert the case to Chapter 7 and finally commence closing of this case that has been pending since April of 2017.

The Property has no equity, there is no plan of reorganization in prospect, and the state court action and the appeal are extremely complex, hotly contested, and subject to extensive litigation. The Trustee is currently without any cash in the estate to properly litigate the state court action and prosecute the appeal. More importantly, after years of litigation and accrual of significant administrative expenses, there is absolutely no guaranty that the estate will succeed. To lose either one will be catastrophic to the estate.

1

1   The Agreement guaranties $1,500,000 to the estate and wipes out EWB's claims against

2   the estate.  Thus, the Trustee believes that the Agreement is in the best interest of the estate and

3   that it should be approved.

4   <center>**II.**</center>

5   <center>**FACTUAL BACKGROUND**</center>

6   **A.    Commencement of the Bankruptcy Case**

7   On April 7, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under

8   chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central

9   District of California, Los Angeles Division, commencing the within bankruptcy case no. 2:17-

10  bk-14276-BB.

11  Listed in the Debtor's Schedules of Assets and Liabilities (the "Schedules") is a

12  commercial and residential real property located at the corner of Lincoln Avenue and

13  Woodbury Road in Altadena, California (the "Property").  The legal description of the Property

14  is attached as an exhibit to the Agreement.

15  On October 3, 2019, a Notice of Appointment of Chapter 11 Trustee was filed with the

16  Bankruptcy Court, reflecting the United States Trustee's appointment of Jason M. Rund as the

17  Chapter 11 Trustee in the Debtor's case. On October 7, 2019, the Bankruptcy Court entered the

18  Order Approving Appointment of Chapter 11 Trustee [Doc 968].   The appointment of the

19  Trustee was the culmination of an Order to Show to Cause proceeding following the Debtor's

20  inability to confirm multiple plans of reorganization.

21  **B.    The State Court Action**

22  Prior to the Petition Date, liens were recorded in favor of EWB and against the Property

23  as follows:

24  1.    Deed of Trust recorded on June 8, 2005 as Inst. No. 05-1336139 in the face

25  amount of $18,000,000.00 (the "First TD")[1]; and

26

27  _____

28  [1] As shown by EWB's Proof of Claim No. 9 and Motion for Relief from Stay filed on April 11, 2019 [Doc 853-855 and supporting exhibits], the principal amount of the First Loan was increased several times to $26,000,000.

<center>2</center>

1    2.    Deed of Trust recorded on May 25, 2007 as Inst. No. 200701276045 in the face

2  amount of $2,500,000 (the "Second TD").

3        To enforce its remedies, EWB filed a complaint for judicial foreclosure of the First TD

4  and appointment of receiver with Superior Court of California, County of Los Angeles (the

5  "State Court") on December 22, 2016, thereby commencing case number BC644796.  In

6  response to the complaint, the Debtor filed its cross-complaint in the State Court on February

7  24, 2017 for, among other things, declaratory relief, fraud, and injunction (the "Cross-

8  Complaint").

9        On June 12, 2019, this Court granted relief from stay for the Debtor to pursue the State

10  Court action and also entered its Order approving the Debtor's application to employ Justin P.

11  Karczag and Encore Law Group, LLP ("Encore") on September 26, 2019 [Doc 954].

12  **C.    Ninth Circuit Appeal**

13        This appeal arises out of the two separate construction loan transactions beginning in

14  2005 wherein the Debtor borrowed from EWB, in the aggregate, approximately $28.5 million.

15  After several extensions of the maturity date, the loans eventually matured in 2009, at which

16  time the Debtor was unable to repay the loans.

17        After a succession of negotiations and forbearance agreements, the full amount of the

18  loans remained unpaid, and EWB commenced foreclosure proceedings, including the State

19  Court action described above.

20        Shortly before the scheduled hearing of EWB's motion for appointment of a receiver,

21  the Debtor filed this bankruptcy case.  A number of complex issues were litigated in this case,

22  as reflected in the 156-page docket.  These issues included the disposition of two claims

23  (related to the two loan transactions) filed by EWB, to which the Debtor filed claim objections.

24  [Doc 269, 271]  Multiple evidentiary hearings were held.

25        On October 2, 2018, this Court filed and entered its order regarding the objections to

26  EWB's two claims (the "Order") [Doc 643], which included this Court's Findings of Fact and

27  Conclusions of Law [Doc 564]. The principal issues addressed in the Order, and that are the

28  subject of this appeal, involved the enforceability of contractual default interest rates.  Ruling in

3

1  favor of the Debtor, this Court found and concluded that the default interest rate provision in

2  the loan documents was not enforceable under California law.

3        On October 10, 2018, EWB filed a Notice of Appeal of the Order (an amended Notice

4  of Appeal was filed the same day). EWB elected to have the appeal heard by the United States

5  District Court. [Doc 654]

6        On March 6, 2019, the District Court entered an "Order Reversing Bankruptcy Court

7  Order [and] Order Remanding Action to Bankruptcy Court".

8        On April 1, 2019, the Debtor filed a Notice of Appeal from the order of the District

9  Court.  The Court of Appeals for the Ninth Circuit received the notice of appeal on April 1,

10  2019, commencing case number 19-55368.  The deadline for the opening brief was extended

11  from time to time, and the current deadline is January 6, 2020.  In light of and pursuant to the

12  Agreement, a motion was filed by the Trustee to extend the deadline once again to await the

13  outcome of this Motion.

14  <div align="center">**III.**</div>

15  <div align="center">**THE COMPROMISE SHOULD BE APPROVED**</div>

16      **A.**    **The bankruptcy rules allow the Court to approve compromises of**

17            **controversies.**

18        Rule 9019(a) states that "the court may approve a compromise or settlement."  Fed. R.

19  Bankr. P. 9019(a).  The decision of whether a compromise should be accepted or rejected lies

20  within the sound discretion of the Court.  In re Carson, 82 B.R. 847, 852 (Bankr. S.D. Ohio

21  1987); In re Hydronic Enterprise, Inc., 58 B.R. 363, 365 (Bankr. D.R.I. 1986); In re Mobile

22  Air Drilling Co., Inc., 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); Knowles v. Putterbaugh

23  (In re Hallet), 33 B.R. 564, 565 (Bankr. D. Me. 1983).  For the reasons set forth below, the

24  Court should approve the Agreement.

25        Sound discretion is judicial power exercised fairly and equitably. As the Supreme

26  Court noted, the term "discretion" denotes the absence of a hard and fast rule:

27            When invoked as a guide to judicial action, it means a sound
          discretion, that is to say, a discretion exercised not arbitrarily or willfully,

28            but with regard to what is right and equitable under the circumstances and

<div align="center">- 4 -</div>

the law, and directed by the reasonableness and conscience of the judge to a just result.

Langnes v. Green, 282 U.S. 531, 541 (1931).

Correspondingly, the Ninth Circuit has recognized that "the bankruptcy court has great latitude in approving settlements." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988).

**B.      Case law supports approval of the Agreement.**

It is well-established that, as a matter of public policy, settlements are favored over continued litigation. See, e.g., In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976); In re Heissenger Resources, Ltd., 67 B.R. 378, 382 (C.D. Ill. 1986).

The focus of inquiry in reviewing and approving compromises is whether the settlement is reasonable under the particular circumstances of the case. See In re General Store of Beverly Hills, 11 B.R. 539 (B.A.P. 9th Cir. 1981). It is not the bankruptcy judge's responsibility to decide the numerous questions of law and fact with respect to the merits of the litigation, but rather to "canvas the issues and see whether the settlement falls below the lowest point of the range of reasonableness." Heissenger Resources, 67 B.R. at 383.

Among the factors to be considered in determining whether a settlement is fair, equitable and reasonable are the following:

(a)      the probability of success in the litigation;

(b)      any impediments to collection;

(c)      the complexity, expense, inconvenience, and delay of litigation; and

(d)      the interest of creditors with deference to their reasonable opinions.

See A & C Properties, 784 F.2d at 1381.

From an analysis of the foregoing factors in this case, the Court should conclude that the terms of the Agreement are fair and equitable and well within the range of reasonableness.

1.    The probability of success with the Cross-Complaint and Ninth Circuit
Appeal is uncertain.

The Trustee and/or his counsel have had numerous meetings and interactions with Debtor's counsel, as well as the attorneys at Encore. According to Encore, during the years of litigation between the Debtor and EWB on other issues, key documents were produced by EWB that strongly support claims for contract, negligence, and intentional torts, including punitive damages. The allegations echoed those described in Encore's employment application filed with the Court on July 23, 2019 [Doc 909]. EWB strenuously disputes these allegations.

Based on the documentation and information available to the Trustee, the Trustee is uncertain whether the estate would prevail at trial. While the State Court action has been pending for a while, the prosecution of the Cross-Complaint is at its infant stage and is not yet even at issue. Without a doubt, litigations will be extremely complex, hotly contested, and extensive – both in time and costs. The Trustee is currently without any cash in the estate to properly litigate the State Court action. While the Encore employment application provides for a fee arrangement with the Debtor's insiders, there is no guarantee that the fees will be paid, especially years down the line. More importantly, after years of litigation and accrual of significant administrative expenses, there is absolutely no guaranty that the estate will succeed.

The Trustee has also determined that there is an uncertain outcome with respect to the Ninth Circuit Appeal for the same reasons. The Trustee recognizes the significance of the appeal to this case. However, he also recognizes that the estate is the appellant and has an uphill battle. Not only is there no guaranty that the estate will prevail, as described below in Section IV, there is a question whether success will benefit the estate.

Through the Agreement, the Trustee is able to avoid these uncertainties and ensure that the estate receives a recovery for distribution to allowed claimants. Therefore, the Trustee believes that the Agreement is in the best interest of the estate.

1         2.  <u>There are no impediments to collection.</u>

2      EWB is a bank.  Accordingly, other than the cost, risk, and delay resulting from

3 litigation, collection is not an issue.

4         3.  <u>The complexity of issues and proceeding with the Cross-Complaint and</u>

5               <u>Ninth Circuit Appeal would result in significant fees and expense for the</u>

6               <u>estate</u>.

7      The legal and factual issues involved are complex.  In addition, proceeding with the

8 State Court action and the appeal would be necessary, lengthy and expensive.  Given that

9 EWB estimated that it already incurred aggregate legal expenses in excess of four million

10 dollars, the Trustee's estimated legal expenses would likely exceed $500,000.  As a result,

11 litigation expenses would continue to accrue and payments to creditors would be significantly

12 delayed or non-existent.  Moreover, the estate currently lacks the resources to fund any

13 significant litigation.  The Agreement will therefore further judicial economy and conserve

14 estate resources.  Further, the Agreement will ease the burden on the State Court and the

15 Ninth Circuit Court of Appeals, as well as parties who would otherwise need to expend

16 significant time and expense in preparing for trial and any appeals.

17         4.  <u>The Agreement benefits the estate's creditors.</u>

18      The Agreement avoids the risk and expense of further litigation and provides the estate

19 with a certain sum that will be used to pay the timely filed, allowed claims in the case.  That

20 would be the result to be achieved by proceeding with trial of the State Court actions if the

21 Trustee succeeded to some extent, but with less cost, risk, and delay.  The Trustee took into

22 consideration the cost of proving the Debtor's positions and contesting the other parties'

23 positions in agreeing on the consideration to be given and received under the terms of the

24 Agreement.

25      In light of the risk that the estate would receive less than the consideration guaranteed by

26 the Agreement or nothing at all if the State Court actions proceeded to trial and appeal, the

27 Trustee exercised his business judgment and entered into the Agreement before additional fees

28 and expenses were incurred in proceeding with the extensive pending litigation.  Accordingly,

1  the Trustee submits that the Agreement is fair, reasonable, and in the best interest of the estate

2  and its creditors, and should therefore be approved by the Court.

3                                          **IV.**

4                        **RELIEF FROM THE AUTOMATIC STAY**

5                              **SHOULD BE GRANTED**

6          In addition to the terms detailed above, the Agreement provides that relief from the

7  automatic stay provided by section 362(a) of the Bankruptcy Code be granted to EWB to

8  exercise its state court remedies, including the foreclosure of the Property.  In accordance with

9  Fed. R. Bankr. P. 4001(d), EWB and the Trustee have entered into a Stipulation to grant relief

10  from stay to EWB, and the Stipulation Motion will be filed concurrently to obtain the Court's

11  approval of the Stipulation.

12          **A.      Valuation.**

13          According to the Declaration of Appraiser Michael Popwell in Support of Debtor

14  Altadena Lincoln Crossing LLC's Response to Order to Show Cause and Proposed Eighth

15  Amended Plan of Reorganization dated September 12, 2019 filed on September 12, 2019 [Doc

16  943], the reconciled opinion of value for the Property was **$22,400,000** as of January 1, 2019.

17  This amount is within the range of the Trustee's opinion of value.

18          **B.      Equity Analysis – With Default Rate of Interest**.

19          Assuming that EWB is allowed its default rate of interest, there is no doubt the Property

20  has no equity since the balance due on the First TD along exceeds $28 million.  *See* Declaration

21  of Steven S. Chang ("Chang Decl.") filed concurrently with the Motion.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

8

**C.**    **Equity Analysis – Without Default Rate of Interest**.

Should EWB's default rate of interest be disallowed, the Trustee believes that the Property still would not have equity.  Unless otherwise noted, the following numbers were stated in Debtor Altadena Lincoln Crossing LLC's Amended Disclosure Statement Describing Seventh Amended Plan of Reorganization dated July 1, 2019 [Doc 900]:

| | |
|---|---|
| $22,400,000 | Debtor's Valuation |
| $18,607,399 | EWB's First TD (*See* Chang Decl.) |
| $126,497 | EWB's Second TD (*See* Chang Decl.) |
| $2,850,000 | BGM Pasadena, LLC |
| $1,940,762 | Dorn Platz |
| $5,500,000 | RJJ Properties |
| $575,000 | OPICS and Bromley LLC |
| $1,120,000 | Costs of Sale at 5% (*See* Rund Decl.) |
| <8,319,658> | Net Equity |

The foregoing analysis does not include the potential $5,000,000 secured claim of The George Garikian Living Trust set forth in Proof of Claim Nos. 10 and 12.

**D.**    **Property is Not Necessary to an Effective Reorganization**.

The cashflow from the Property is, at best, breakeven.  Further, there will be expenses necessary to address the parking issues with The George Garikian Living Trust and continued accrual of professional fees to litigate the Cross-Complaint and to prosecute the Ninth Circuit appeal.  The only possible reorganization plan is to really hope for the value of the Property to increase significantly.  Between a plan that has no guaranties and the Agreement, the Trustee is opting to accept a sum certain of $1,500,000 for the estate.

**V.**

**CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order:

1.    Granting the Motion;

2.    Approving the Agreement;

3.    Authorizing and directing the Trustee and EWB to take any and all steps necessary to effectuate the Agreement;

9

1     4.      Approving the Stipulation between the Trustee and EWB that grants relief from

2 the automatic stay to allow EWB to foreclose on the Property and other related relief;

3     5.      Waiving the 14-day stay as provided in Rule 4001(a)(3) of the Federal Rules of

4 Bankruptcy Procedure; and

5     6.      Providing such other and further relief as is just and proper.

6

7 DATED: December 20, 2019          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

8                                          By:     */s/ Timothy J. Yoo*

9                                               TIMOTHY J. YOO

10                                               CARMELA T. PAGAY
Attorneys for Jason Rund
Chapter 11 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF JASON RUND

I, Jason Rund, declare as follows:

1.       I am the duly-appointed, qualified, and acting Chapter 11 Trustee for the bankruptcy estate of Altadena Lincoln Crossing, LLC. I have personal knowledge of the matters set forth herein and if called as a witness could and would testify competently thereto.  I submit this Declaration in support of the accompanying Motion to Approve Agreement with East West Bank for: (1) Settlement of State Court Action; (2) Relief from Stay; and (3) Dismissal of Ninth Circuit Appeal (the "Motion").

2.       On April 7, 2017 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, commencing the within bankruptcy case no. 2:17-bk-14276-BB.

3.       Listed in the Debtor's Schedules of Assets and Liabilities (the "Schedules") is a commercial and residential real property located at the corner of Lincoln Avenue and Woodbury Road in Altadena, California (the "Property").  The Debtor's reconciled opinion of value for the Property was $22,400,000 as of January 1, 2019.  This amount is within the range of my opinion of value.

4.       On October 3, 2019, a Notice of Appointment of Chapter 11 Trustee was filed with the Bankruptcy Court, reflecting the United States Trustee's appointment of me as the Chapter 11 Trustee in the Debtor's case. On October 7, 2019, the Bankruptcy Court entered the Order Approving Appointment of Chapter 11 Trustee [Doc 968].   I am informed that my appointment was the culmination of an Order to Show to Cause proceeding following the Debtor's inability to confirm multiple plans of reorganization.

5.       I am informed that EWB filed a complaint for judicial foreclosure of the First TD and appointment of receiver with Superior Court of California, County of Los Angeles (the "State Court") on December 22, 2016, thereby commencing case number BC644796.  I am informed that, in response to the complaint, the Debtor filed its cross-complaint in the State

Court on February 24, 2017 for, among other things, declaratory relief, fraud, and injunction (the "Cross-Complaint").

6.    On June 12, 2019, this Court granted relief from stay for the Debtor to pursue the State Court action and also entered its Order approving the Debtor's application to employ Justin P. Karczag and Encore Law Group, LLP ("Encore") on September 26, 2019 [Doc 954].

7.    My counsel and I have had numerous meetings and interactions with Debtor's counsel, as well as the attorneys at Encore. According to Encore, during the years of litigation between the Debtor and EWB on other issues, key documents were produced by EWB that strongly support claims for contract, negligence, and intentional torts, including punitive damages. The allegations echoed those described in Encore's employment application filed with the Court on July 23, 2019 [Doc 909]. I am informed that EWB strenuously disputes these allegations.

8.    Based on the documentation and information available, I am uncertain whether the estate would prevail at trial. While the State Court action has been pending for a while, I am informed that the prosecution of the Cross-Complaint is at its infant stage and is not yet even at issue. Without a doubt, litigations will be extremely complex, hotly contested, and extensive – both in time and costs. Given that EWB estimated that it already incurred aggregate legal expenses in excess of four million dollars, I estimated legal expenses would likely exceed $500,000. The estate is currently without any cash to properly litigate the State Court action. While the Encore employment application provides for a fee arrangement with the Debtor's insiders, there is no guarantee that the fees will be paid, especially years down the line. More importantly, after years of litigation and accrual of significant administrative expenses, there is absolutely no guaranty that the estate will succeed.

9.    I also determined that there is an uncertain outcome with respect to the Ninth Circuit Appeal for the same reasons. I recognizes the significance of the appeal to this case. However, I also recognize that the estate is the appellant and has an uphill battle. Not only is there no guaranty that the estate will prevail, as described below in Section IV of the Motion, there is a question whether success will benefit the estate.

1       10.    Through the Agreement, I am able to avoid these uncertainties and ensure that

2 the estate receives a recovery for distribution to allowed claimants. Therefore, I believe that the

3 Agreement is in the best interest of the estate.

4       11.    A true and correct copy of the Agreement is attached as <u>Exhibit 1</u>.

5      I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct and that this declaration was executed on December 20, 2019 at El

7 Segundo, California.

8

9                                 JASON RUND

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

000014

## SETTLEMENT AGREEMENT AND GENERAL RELEASES

This Settlement Agreement and General Releases (the "**Agreement**") is entered into as of December 17, 2019, by and between Jason M. Rund, the duly appointed Chapter 11 Trustee (the "**Trustee**") for the bankruptcy estate (the "**Estate**") of Altadena Lincoln Crossing, LLC (the "**Debtor**"), on the one hand, and East West Bank ("**EWB**"), on the other hand.  The Trustee and EWB are referred to collectively as the "**Parties**" and each individually as a "**Party**."  This Agreement is based upon the following facts, which each of the Parties confirms is entirely true and accurate in every material respect:

## RECITALS

A.    On April 7, 2017 (the "**Petition Date**"), the Debtor commenced a Chapter 11 bankruptcy case by filing a voluntary petition for relief under Chapter 11 of 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "**Bankruptcy Court**"), thereby commencing the bankruptcy case number 2:17-bk-14276-BB.

B.    On October 3, 2019, a Notice of Appointment of Chapter 11 Trustee was filed with the Bankruptcy Court, reflecting the United States Trustee's appointment of Jason M. Rund as the Chapter 11 Trustee in the Debtor's case. On October 7, 2019, the Bankruptcy Court entered the Order Approving Appointment of Chapter 11 Trustee [Doc 968].

C.    Listed in the Debtor's Schedules of Assets and Liabilities (the "**Schedules**") is a commercial and residential real property located at the corner of Lincoln Avenue and Woodbury Road in Altadena, California (the "**Property**").  The legal description of the Property is attached as Exhibit 1 to this Agreement.

D.    Prior to the Petition Date, liens were recorded in favor of EWB and against the Property as follows:

      1.    Deed of Trust recorded on June 8, 2005 as Inst. No. 05-1336139 in the face amount of $18,000,000.00 (the "**First TD**"); and

      2.    Deed of Trust recorded on May 25, 2007 as Inst. No. 200701276045 in the face amount of $2,500,000 (the "**Second TD**").

E.    To enforce its remedies, EWB filed a complaint for judicial foreclosure of the First TD with Superior Court of California, County of Los Angeles (the "**State Court**") on December 22, 2016, thereby commencing case number BC644796.  In response to the complaint, the Debtor filed its cross-complaint in the State Court on February 24, 2017 for, among other things, declaratory relief, fraud, and injunction (the "**Cross-Complaint**").

F.    On August 8, 2017, EWB filed Proof of Claim Nos. 9 and 11 in the Bankruptcy Case, asserting that the amount of $25,909,579.33 was owed under the First TD and that the amount of $2,765,378.98 was due under the Second TD as of the Petition Date.  The Debtor objected to these claims, resulting in the Bankruptcy Court's "Order Regarding Debtor's

1

Objections to Secured Creditor East West Bank's Proof of Claim Nos. 9 and 11" [Doc 643] (the **"Claim Objection Order"**).  EWB appealed the **Claim Objection Order to the** United States District Court, Case No. 2:18-cv-08738-JLS.  The District Court reversed the Claim Objection Order by Order filed on March 6, 2019 (the **"District Court Order"**), which the Debtor appealed to the United Stated Court of Appeals for the Ninth Circuit on April 1, 2019 (the **"Ninth Circuit Appeal"**).  The Ninth Circuit Appeal is pending as Case No. 19-55368, and the Debtor's opening brief is due on January 6, 2020.

G.      The Parties desire to settle their disputes, without any admission of liability, regarding the validity, extent and priority of the claims and liens asserted by EWB against the Debtor and the Estate, including, without limitation, the Proof of Claim Nos. 9 and 11 and the First TD and Second TD recorded against the Property.

NOW, THEREFORE, in consideration of the recitals, covenants and conditions in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## AGREEMENT

1.      Incorporation of Recitals.  The recitals set forth above are incorporated herein by reference and is made part of this Settlement Agreement.

2.      Payment.  EWB shall pay the Trustee the sum of One Million Five Hundred Thousand Dollars ($1,500,000) (the **"Settlement Payment"**) within 90 calendar days following the entry of an order approving this Agreement (the **"Settlement Payment Deadline"**).  The Settlement Payment shall be made by cashier's check payable to "Jason Rund, Chapter 7 Trustee" and delivered to the following address:

> Timothy J. Yoo
> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 800 South Figueroa Street, Suite 1260
> Los Angeles, California 90017

The Settlement Payment shall be in full payment of any and all amounts that the Trustee or the Estate may seek from EWB, the Property, any proceeds thereof, or any other collateral secured by the First TD or Second TD, and the Trustee shall be solely responsible for paying any all claims or other amounts owed by or asserted against the Estate, including but not limited to any and all administrative claims by the Trustee, its counsel, accountants or other professionals, and any and all administrative and other claims by or against Debtor or the Estate.

3.      Ninth Circuit Appeal.  The Trustee shall dismiss the Ninth Circuit Appeal within 14 calendar days following the entry of an order approving this Agreement.  Until this Agreement is approved, the Parties shall cooperate to extend the briefing schedule so as to preserve each party's rights.  Upon dismissal of the Ninth Circuit Appeal, the Parties agree that the District Court Order shall be final and binding.

2

4.    Cross-Complaint.  Within 14 calendar days following the entry of an order approving this Agreement, the Trustee shall, at the election of EWB, either assign all of the Estate's rights, title and interest in the Cross-Complaint to EWB or its designee or provide EWB with an executed Request for Dismissal of the Cross-Complaint with prejudice in its entirety, which EWB can then immediately file.

5.    Relief from Stay.  The Trustee hereby stipulates to the Bankruptcy Court granting EWB relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code to complete its foreclosure of the Property and all other related relief.  The Trustee shall include in the proposed Order approving, and authorizing the Trustee to enter into, this Agreement as provided in Section 10, below, that  EWB is granted relief from stay as of the effective date of that Order.

6.    Management of Property.  The Trustee shall continue to manage and operate the Property pursuant to the existing cash collateral stipulation (Doc. 992) until the earlier of EWB's foreclosure of the Property or the Settlement Payment Deadline. Any unused cash collateral, including any amounts remaining in any reserve account(s) established for the payment of property taxes and insurance, shall be paid to EWB within 60 days following the conclusion of the Trustee's operation of the Property to allow all invoices to be processed.  Furthermore, should the cashflow of the Property require, EWB will allow a reduction of the amount of the adequate protection payment to cover any shortfall needed to pay the Property's operating expenses set forth in Exhibit A to the existing cash collateral stipulation or other expenses approved by EWB.

7.    Trustee's Release of EWB.  Except as set forth otherwise herein, and in consideration of the mutual covenants, conditions, and promises set forth herein, upon the Trustee's receipt of the Settlement Payment as set forth in Section 2, above, the Trustee fully, finally, and forever releases, relieves, and discharges EWB  and its past and present affiliates, associated entities, parent companies , companies with shared ownership, subsidiaries, related companies, executors, administrators, predecessors, successors, assigns, agents, owners, shareholders, investors, members, representatives, managers, directors, officers, companies, partners, insurers, controlling persons, advisors, employees, attorneys, and accountants (collectively the "EWB Releasees"), of and from any and all actions, claims, causes of action, allegations, suits, debts, demands, liabilities, damages, losses, sums of money, accounts, reckonings, obligations, costs (including attorney's fees), expenses, liens, covenants, agreements, contracts and promises, of any kind or nature, in law or in equity, which either may have or have had, whether or not they have been subject to dispute and whether or not known or unknown, suspected or unsuspected, asserted or unasserted, by reason of any matter, or cause whatsoever, arising out of any known or unknown fact, condition, or incident occurring prior to the date of the Trustee's receipt of the Settlement Payment, *provided, however,* that this release **shall not** extend to any action or claim arising out of the enforcement of this Agreement.  The Trustee makes the foregoing releases on behalf of himself, individually and in his capacity as the Trustee, the Estate, and each of their past and present executors, administrators, predecessors, successors, assigns, agents, representatives, insurers, advisors, employees, attorneys, and accountants.

8.    EWB's Release of the Trustee.  Except as set forth otherwise herein, and in consideration of the mutual covenants, conditions, and promises set forth herein, upon the

3

000017

Trustee's receipt of the Settlement Payment as set forth in Section 2, above, EWB fully, finally, and forever releases, relieves, and discharges the Trustee, the Estate, and each of their advisors, employees, attorneys, and accountants (collectively the "Trustee Releasees"), of and from any and all actions, claims, causes of action, allegations, suits, debts, demands, liabilities, damages, losses, sums of money, accounts, reckonings, obligations, costs (including attorney's fees), expenses, liens, covenants, agreements, contracts and promises, of any kind or nature, in law or in equity, which either may have or have had, whether or not they have been subject to dispute and whether or not known or unknown, suspected or unsuspected, asserted or unasserted, by reason of any matter, or cause whatsoever, arising out of any known or unknown fact, condition, or incident occurring prior to the date of the Trustee's receipt of the Settlement Payment, *provided, however*, that this release **shall not** extend to any action or claim arising out of the enforcement of this Agreement. EWB makes the foregoing releases on behalf of itself and each of its past and present affiliates, associated entities, parent companies, companies with shared ownership, subsidiaries, related companies, executors, administrators, predecessors, successors, assigns, agents, owners, shareholders, investors, members, representatives, managers, directors, officers, companies, partners, insurers, controlling persons, advisors, employees, attorneys, and accountants.

9.    Release of Unknown Claims.  The Parties understand and agree that the released claims include not only claims presently known to them, but also include all unknown or unanticipated claims, rights, demands, actions, obligations, liabilities, and causes of action of every kind and character that would otherwise come within the scope of the released claims described in Section 7. The Parties understand that they may hereafter discover facts different from what they now believe to be true, which if known, could have materially affected this Agreement, but they nevertheless waive any claims or rights based on different or additional facts. The Parties knowingly and voluntarily waive any and all rights or benefits that they may now have, or in the future may have, under the terms of California Civil Code section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10.    Bankruptcy Court Approval.  Promptly after the execution of this Agreement by both Parties, the Trustee shall file a motion, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking the entry of the Order approving, and authorizing the Trustee to enter into, the Agreement and granting EWB relief from stay as set forth in Section 5, above.  If the Bankruptcy Court does not approve this Agreement, including the grant of relief from stay pursuant to Section 5, above, then this Agreement shall be deemed null and void and of no force and effect, and the Parties to this Agreement shall retain all rights, claims and/or defenses that they may have against each other.  EWB acknowledges that the settlement terms set forth in this Agreement may be subject to overbids by interested parties.

11.    Further Assurances.  The Parties agree to perform such acts and to prepare,

4

000018

execute, deliver, file, and record any documents or agreements reasonably required to perform under and satisfy the conditions in this Agreement, or to give full force and effect to this Agreement.

12.    Complete Agreement. This Agreement supersedes any and all other agreements, understandings, negotiations or discussions, either oral or in writing, express or implied between the Parties concerning settlement.  The Parties to this Agreement each acknowledge that no representations, inducements, promises, agreements or warranties, oral or otherwise, have been made by them or any of them, or anyone acting on their behalf which are not embodied in this Agreement, that they have not executed this Agreement in reliance on a representation, inducement, promise, agreement or warranty, and that no representation, inducement, promise, agreement or warranty not contained in this Agreement including any purported supplements, modifications, waivers or terminations of this Agreement shall be valid or binding, unless executed in writing by all of the Parties to this Agreement.

13.    Amendment.  No modification or amendment of any term or provision of this Agreement shall be valid unless such modification or amendment is in writing and has been signed by both Parties.

14.    Terms Read and Understood.  Each of the Parties hereby certifies that it (i) has read the entire Agreement, (ii) has conferred with legal counsel pertaining to this Agreement, (iii) fully understands all of the terms of this Agreement, and (iv) acknowledges and represents that he enters into this Agreement and all other contemplated documents of its own free will and not due to any oral representation, commitment, promise, pressure, or duress from any other party.

15.    Successors.  Each covenant in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective heirs, successors, assigns, agents, representatives (past and present), and legal and personal representatives, including the Chapter 7 trustee should this bankruptcy case convert to Chapter 7 or any successor Chapter 11 trustee.

16.    Construction.  As used in this Agreement, the masculine and feminine gender, in the singular or plural, shall be deemed to include the others whenever the text so requires.  The term "including" in any form shall not be limiting and shall be construed to mean "including, but not limited to."  Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against either of the Parties.

17. Interpretation.  This Agreement and any ambiguities or uncertainties herein, shall be equally and fairly interpreted and construed without reference to the identity of the Party or Parties preparing, drafting or proposing the provisions hereof or the documents referred to herein, on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of the Agreement, or have had equal opportunity to do so. Accordingly, the Parties hereby waive the benefit of California Civil Code Section 1654 and any successor or amended statute, providing that in cases of uncertainty, language of a contract should be interpreted most strongly against the Party who caused the uncertainty to exist.  Each of the Parties has cooperated in the drafting and preparation of the Agreement.

000019

18.     <u>Governing Law; Enforceability</u>.   This Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of California, without giving effect to the principles of conflicts of law thereof, and applicable bankruptcy law.  Each of the Parties agrees that as long as the Debtor's bankruptcy case remains open, any dispute, claim or controversy arising out of or relating to this Agreement shall be heard in the Bankruptcy Court and that the Bankruptcy Court has exclusive jurisdiction thereof.  If the Debtor's bankruptcy case is closed, then any court of competent jurisdiction may resolve any dispute, claim or controversy arising out of or relating to this Agreement.

19.     <u>Severability</u>.  If any provision of this Agreement is determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision of this Agreement.

20.     <u>Attorneys' Fees and Costs</u>. The Parties shall each bear their own attorneys' fees and costs related to the negotiation of this Agreement and the preparation and hearing of the motion to approve this Agreement set forth in Section 10, above.

21.     <u>No Admission of Liability</u>. Nothing contained herein shall be deemed to be an admission of liability or wrongdoing by any Party hereto.

22.     <u>No Waiver</u>.  Failure to insist on compliance with any term, covenant or condition contained in this Agreement shall not be deemed a waiver of that term, covenant or condition, nor should any waiver or relinquishment of any right or power contained in this Agreement, at any one time or more times, be deemed a waiver or relinquishment of any right or power at any other time or times.

23.     <u>Counterparts</u>. This Agreement may be executed in separate counterparts which, together shall constitute one and the same fully executed Agreement.  Signed counterparts transmitted by facsimile or email shall be deemed originals.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered, all as of the date and year first listed above.

_____

Jason M. Rund, Chapter 11 Trustee of the
Bankruptcy Estate of Altadena Lincoln Crossing, LLC


EAST WEST BANK


By_____
   Its_____

6

18.    Governing Law; Enforceability.  This Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of California, without giving effect to the principles of conflicts of law thereof, and applicable bankruptcy law.  Each of the Parties agrees that as long as the Debtor's bankruptcy case remains open, any dispute, claim or controversy arising out of or relating to this Agreement shall be heard in the Bankruptcy Court and that the Bankruptcy Court has exclusive jurisdiction thereof.  If the Debtor's bankruptcy case is closed, then any court of competent jurisdiction may resolve any dispute, claim or controversy arising out of or relating to this Agreement.

19.    Severability.  If any provision of this Agreement is determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision of this Agreement.

20.    Attorneys' Fees and Costs.  The Parties shall each bear their own attorneys' fees and costs related to the negotiation of this Agreement and the preparation and hearing of the motion to approve this Agreement set forth in Section 10, above.

21.    No Admission of Liability.  Nothing contained herein shall be deemed to be an admission of liability or wrongdoing by any Party hereto.

22.    No Waiver.  Failure to insist on compliance with any term, covenant or condition contained in this Agreement shall not be deemed a waiver of that term, covenant or condition, nor should any waiver or relinquishment of any right or power contained in this Agreement, at any one time or more times, be deemed a waiver or relinquishment of any right or power at any other time or times.

23.    Counterparts.  This Agreement may be executed in separate counterparts which, together shall constitute one and the same fully executed Agreement.  Signed counterparts transmitted by facsimile or email shall be deemed originals.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered, all as of the date and year first listed above.

Jason M. Rund, Chapter 11 Trustee of the
Bankruptcy Estate of Altadena Lincoln Crossing, LLC

EAST WEST BANK

By_____  STEVEN CHANG
Its_____

6

# EXHIBIT 1

# EXHIBIT "A"
Legal Description

For APN/Parcel ID(s):    5827-018-041

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THOSE PORTIONS OF LOTS 1, 2 AND 3 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHERLY LINE OF THE NORTHERLY 40 FEET OF SAID LOT 2 WITH THE WESTERLY LINE OF SAID LOT 2; THENCE NORTHERLY ALONG SAID WESTERLY 22.67 FEET TO THE TRUE POINT OF BEGINNING, SAID TRUE POINT OF BEGINNING ALSO BEING THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 25 FEET TANGENT TO SAID WESTERLY LINE AND TANGENT TO A LINE PARALLEL LINE WITH AND DISTANT 50 FEET NORTHEASTERLY MEASURED AT RIGHT ANGLES FROM A LINE WHICH BEARS SOUTH 72° 37' 55" EAST AND PASSES THROUGH A POINT IN THE CENTERLINE OF LINCOLN AVENUE 80 FEET WIDE AS SHOWN ON SAID MAP DISTANT NORTH 0° 37' 50" WEST THEREOF 74.91 FEET FROM A LINE PARALLEL WITH AND 30 FEET SOUTHERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF SAID LOT 1 OF SAID TRACT; THENCE SOUTHEASTERLY ALONG SAID CURVE 31.41 FEET TO SAID FIRST MENTIONED PARALLEL LINE; THENCE SOUTH 72° 37' 55" EAST 8.31 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 950 FEET; THENCE SOUTHEASTERLY ALONG SAID LAST MENTIONED CURVE 138.96 FEET TO THE EASTERLY LINE OF SAID LOT 1; THENCE NORTHERLY ALONG THE EASTERLY LINES OF SAID LOTS 1, 2 AND 3 TO THE NORTHERLY LINE OF THE SOUTHERLY 20 FEET OF SAID LOT 3; THENCE WESTERLY ALONG SAID LAST MENTIONED NORTHERLY LINE TO THE WESTERLY LINE OF SAID LOT 3; THENCE SOUTHERLY ALONG THE WESTERLY LINES OF SAID LOST 2 AND 3 TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

LOT 38 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THOSE PORTIONS OF SAID LOTS INCLUDED WITHIN A STRIP OF LAND 50 FEET WIDE THE SOUTHERLY BOUNDARY OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTERLINE OF LINCOLN AVENUE 80 FEET SIDE AS SHOWN ON SAID MAP DISTANT NORTH 0° 37' 50" WEST THEREON 74.91 FEET FROM A LINE PARALLEL WITH AND 30 FEET SOUTHERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF LOT 1 OF SAID TRACT; THENCE SOUTH 72° 37' 55" EAST 52.29 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 1000 FEET TANGENT TO SAID LAST MENTIONED COURSE AND TANGENT TO A LINE PARALLEL WITH AND 20 FEET SOUTHERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF SAID LOT 35; THENCE EASTERLY ALONG SAID CURVE 313.63 FEET TO SAID LAST MENTIONED PARALLEL LINE; THENCE SOUTH 89° 23' 55" EAST ALONG SAID LAST MENTIONED PARALLEL LINE 100 FEET.

PARCEL 3:

THE NORTH 30 FEET OF LOT 3 AND THE SOUTH 10 FEET OF LOT 4 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THAT PORTION OF LOT 4 BEGINNING AT A POINT 10 FEET NORTH OF THE SOUTHWEST CORNER OF LOT 4; THENCE NORTH 21.70 FEET; THENCE EAST 160 FEET; THENCE SOUTH 21.70 FEET; THENCE WEST 160 FEET

000023

## EXHIBIT "A"

### Legal Description

TO THE POINT OF BEGINNING OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 5:

THE NORTH 18.30 FEET OF LOT 4 AND ALL OF LOT 5, EXCEPT THE NORTH 8.30 FEET THEREOF OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 6:

THE SOUTH 12 FEET OF LOT 6 AND NORTH 8.30 FEET OF LOT 5 OF SCRIBNER'S TRACT, RANCHO SAN PASQUAL, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 7:

LOT 6 OF SCRIBNER'S TRACT, IN THE RANCHO SAN PASQUAL, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THE SOUTHERLY 12.00 FEET THEREOF.

PARCEL 8:

LOT 7 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 9:

LOT 9 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 10:

LOT 8 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 11:

LOTS 35, 36 AND 37 OF SCRIBNER'S TRACT, AS SHOWN ON A MAP RECORDED IN BOOK 22, PAGE 192 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THOSE PORTIONS OF SAID LOT INCLUDED WITHIN A STRIP OF LAND 50 FEET WIDE, THE SOUTHERLY BOUNDARY OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTERLINE OF LINCOLN AVENUE 80 FEET WIDE AS SHOWN ON SAID MAP DISTANT NORTH 0° 37' 50" WEST THEREON 74.91 FEET FROM A LINE PARALLEL WITH AND 30 FEET SOUTHERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF LOT 1 OF SAID TRACT; THENCE SOUTH 72° 37' 55" EAST 52.29 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH HAVING A RADIUS OF 1000 FEET TANGENT TO SAID LAST MENTIONED COURSE AND TANGENT TO A LINE PARALLEL WITH AND 20 FEET SOUTHERLY MEASURED AT RIGHT ANGLES FROM THE SOUTHERLY LINE OF SAID LOT 35; THENCE EASTERLY ALONG SAID CURVE 313.65 FEET TO SAID LAST MENTIONED PARALLEL LINE; THENCE NORTH 89° 23' 55" EAST ALONG SAID LAST MENTIONED PARALLEL LINE 100 FEET.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **MOTION TO APPROVE AGREEMENT WITH EAST WEST BANK FOR: (1) SETTLEMENT OF STATE COURT ACTION; (2) RELIEF FROM STAY; AND (3) DISMISSAL OF NINTH CIRCUIT APPEAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_December 20, 2019_**, I checked the CM/ECF docket for this bankruptcy case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**SEE ATTACHED NEF SERVICE LIST.**

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **_December 20, 2019_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
USBC – Central District of CA
255 E. Temple St
Suite 1534 / Ctrm 1539
Los Angeles, CA 90012

Debtor
Altadena Lincoln Crossing LLC, a Delaware limited
liability company
210 S Orange Grove Blvd
Pasadena, CA 91105

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2019 | Megan Wertz | /s/ Megan Wertz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Daniel I Barness    daniel@barnesslaw.com
- Anastasia E Bessey    anastasia.bessey@kralikjacobs.com,
  lois.jacobs@kralikjacobs.com,rina.ross@kralikjacobs.com,aeblaw@gmail.com
- Mikel R Bistrow    mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Peter W Bowie    peter.bowie@dinsmore.com,
  caron.burke@dinsmore.com;cindy.renteria@dinsmore.com
- Christopher Celentino    chris.celentino@dinsmore.com,
  caron.burke@dinsmore.com;SDCMLFiles@DINSMORE.COM
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Bernard R Given    bgiven@loeb.com,
  mortiz@loeb.com;ladocket@loeb.com;bgiven@ecf.courtdrive.com
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com,
  dwalker@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com
- Lois M Jacobs    lois.jacobs@kralikjacobs.com,
  anastasia.bessey@kralikjacobs.com,rina.ross@kralikjacobs.com
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Lisa Lenherr    ll@tiemlaw.com, bankruptcy@wendel.com
- Brian A Procel    bprocel@millerbarondess.com,
  rdankwa@millerbarondess.com;docket@millerbarondess.com
- Uzzi O Raanan    uraanan@DanningGill.com, DanningGill@gmail.com;uraanan@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com,
  morani@ronaldrichards.com,justin@ronaldrichards.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- Gregory M Salvato    gsalvato@salvatolawoffices.com,
  calendar@salvatolawoffices.com;jboufadel@salvatolawoffices.com;gsalvato@ecf.inforuptcy.com
- John P Schock    schockandschock@yahoo.com
- John N Tedford    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- James A Tiemstra    jat@tiemlaw.com, sml@tiemlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Timothy J Yoo    tjy@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                    **F 9013-3.1.PROOF.SERVICE**